### FIRST NAT. BANK OF McGREGOR

v.

### COLLINS et al.

#### No. 10207.

Court of Civil Appeals of Texas.

Austin.

March 24, 1954.

Rehearing Denied April 14, 1954.

W. Lance Corsbie, Corsbie, Koehne, Jones, Fulbright & Ponder, Witt, Terrell, Jones & Riley, Waco, for appellant.

Cofer & Cofer, Austin, Lee Curtis, Belton, Neil E. Clinkenbeard, Killeen, for appellees.

ARCHER, Chief Justice.

This suit was instituted by The First National Bank of McGregor, hereinafter called appellant, against M. Z. Collins, doing business as Collins Construction Company and W. K. Montgomery, doing business as Montgomery Construction Company, hereafter called appellees, irrespective of the fact that in some phases of this case such parties may be appellants, to recover judgment for $15,220 growing out of the execution by Montgomery to the Bank of notes aggregating $15,220 and the signing and delivery of a letter, statement by Collins that he would pay 90% of the amounts of certain certificates, and the signing and delivery of such completion certificates by Collins.

Appellee Collins had a contract to construct a housing project at McGregor, Texas and Montgomery was given two subcontracts to make certain excavation and concrete work.

Plaintiff alleged in its pleading that Montgomery was given the contract by Collins to do certain grading, masonry and concrete work for a total consideration of $23,550, and that Montgomery contacted plaintiff and requested that the Bank advance money to finance the subcontract and to pay for work, materials, etc., in the performance of the subcontract, and that the Bank was unwilling to advance the money to Montgomery based on an assignment of the contract, and that Collins wrote a letter dated October 28, 1952, herein set out, but that the Bank still refused to advance the money solely upon the subcontract and upon the letter, and that Collins contacted the Bank and told the Bank that he would receive payments on his general contract at intervals upon completion of portions of the work, and promised that he would have prepared at weekly intervals an estimate of the amount of work completed by Montgomery, setting forth the amount of money due for work, and requested the Bank to advance funds to finance the subcontract and agreed that he would pay the Bank 90% of all completion estimates authorized by himself or his company; that it was to the interest of Collins for the Bank to advance the funds, was benefitted thereby, and he assumed the said liability as a primary obligation.

That in carrying out the plan, contract and agreement Collins at various times sent completion estimates to the Bank by Montgomery showing to the Bank that Montgomery had completed portions of said subcontract and was entitled to various sums of money, which plaintiff Bank in the alternative says were false and fraudulently made; that the Bank in reliance upon Collins' promises, representations and agreements advanced 90% of such completion orders from time to time in a total sum of $15,220. That Montgomery signed notes acknowledging the receipt of the money and promising to pay the said sums to the Bank, that none of the notes sued on had been paid; that Collins in violation of his contract and agreement paid certain sums of money to other persons in deroga-

tion of the plaintiff's rights; that Collins having induced plaintiff to advance the sums of money by his actions, promises and conduct, knowing that plaintiff would probably suffer damages is now estopped to deny liability for the sums of money. Defendant Collins answered that the alleged promises were not in writing and are within the Statute of Frauds and denied the allegations of the plaintiff, and further plead that Montgomery had failed to perform the work except to the amount of $15,726.75, and alleged that before the commencement of this suit Montgomery released Collins from all terms and claims under the subcontract.

Further allegation was made that before the filing of this suit that defendant Collins made payments to or for Montgomery in excess of the amount due said Montgomery, or a sum of $18,025.07 in payment for obligations incurred by Montgomery in attempting to perform his subcontract; and further answer was made that all obligations, if any due the Bank by Collins, which are denied, that such obligation was satisfied and paid by payments to other laborers and materialmen, and that the retention of a check for $2,995.53 by plaintiff constitutes an acceptance thereof in full satisfaction of the cause of action.

Montgomery filed his answer and cross-action, pleading the subcontracts, and that he began the performance of the contracts until prevented by Collins, and that Collins did not make the payments as provided by the subcontract; that Collins supervised and directed the work and knew that Montgomery would have to make expenditures, etc. and in failing to make the payments caused Montgomery to be forced to sell his equipment at a loss and sought damages.

The contract is as follows:

"(Contract) M. Z. Collins Construction Co.
Box 5065, Austin, Texas

"To: Montgomery Construction Co.
Killeen, Texas.

"Please furnish all necessary labor, materials, and equipment to perform the work

listed below in strict accordance with the plans and specifications for the subject job:

"1. Street work, curbs, gutters, curb and gutters, site grading, and building foundations ready for masonry work; batterboards for buildings to be erected by general contractor and reinforcing steel to be furnished FOB trucks, job-site, by general contractor; garbage can slabs and clothesline pole foundations are included in this lot; for the lump sum price of $23,550.00.

"Terms and conditions of this contract are:

* * * * * *

"4. Invoices received prior to the first of the month will be paid on or before the 20th of the following month, less 15% retainage, for work and materials approved by the Architect. Retainage will be paid within 30 days after completion of the job. Make invoices in triplicate. * * *

"Please sign and return one copy of this order to us.

"Yours very truly,
M. Z. Collins Construction Co.
By ————————————

"Accepted: Montgomery Construction Co.
By W. K. Montgomery

"Note: All concrete used in the performance of this sub-contract shall be purchased from N. R. Smith for prices listed in our Material Order No. 1052–1, a copy of which is attached."

The letter from Collins is as follows:

"(Letterhead) M. Z. Collins Construction Co.
Box 5065, Austin, Texas
"28 October, 1952

"Montgomery Construction Co.
Killeen, Texas

"Gentlemen:

"Please be advised that all payments made by us for your performance of our Work Orders 1052–500 and 1052–2401 will be made jointly to you and to the First National Bank, McGregor, Texas, for certain items of work in the construction of Proj-

ect Texas 102–1 for the Housing Authority of the City of McGregor, Texas.

"Yours very truly,
M. Z. Collins Construction Co.
By: s/ M. Z. Collins.

"Acknowledgements: 1. Montgomery Construction Co.
s/ W. K. Montgomery
2. First National Bank, McGregor, Texas
By: s/ G. W. England,
President"

The first completion certificate is as follows:

"Montgomery Construction Company—McGregor, Texas. Nov. 1952

"In Account With First National Bank of McGregor, Texas.

| "Forms | 1300c | .30 | $ 450.00 |
|---|---|---|---|
| Excav | 100 cy a | 3.50 | 350.00 |
| Fill Back | 100 y a | 3.00 | 450.00 |
| Grade | 6400 o a | .02 | 128.00 |
| St. Excav | 1200 cy a | 1.50 | 1800.00 |
| | | | $3178.00 |
| | | | 318 |
| | | | 2860. |

"Montgomery Construction Co.
By (Signed) W. K. Montgomery
Verification: M. Z. Collins Const Co.
By s/ Tom Holstien."

The other completion certificates are similar to Exhibit 2, except as to dates, estimates and amounts, except Exhibit P-3, which is:

"(Letterhead) M. Z. Collins Construction Co.
Box 5065, Austin, Texas
"24 December, 1952

"First National Bank
McGregor, Texas

"Gentlemen:

"We certify that the Montgomery Construction Company has completed work on

our local housing project job in the amount as follows of this date:

"Work to date    $17,229.00
"Less 10% retainage    1,730.00

     .15,499.00
"Less previous certifications    13,149.00

"Net certification this date    2,350.00
       "Yours very truly,
         M. Z. Collins Construction Co.
         By: s/ Tom Holstien"

The notes to the Bank were signed by Montgomery Construction Company by W. K. Montgomery and aggregate the amount sued for.

Exhibit P–16 reads:

"(Letterhead) M. Z. Collins Construction Co.
       Box 5065, Austin, Texas
         "8 January, 1953
"Montgomery Construction Co.
and First National Bank, McGregor, Texas
McGregor, Texas

     "Re: Housing Project Tex–102–1——
"Gentlemen:

"Enclosed is our check in the amount of $2,995.53 which represents the net amount due on your first and final estimate for work performed on the subject job. A detailed account of his estimate is as follows:

Work to date    $17,229.00
Less reserve for retopping 2 slabs    720.00

     16,509.00
"Less your accounts paid by us:
N. R. Smith Concrete   $6,889.46
Your NSF–funds checks   751.85   7,641.31

"Less reserve for your unpaid bills:
   Dixie Plumbing Co.    200.00
   Barnes Lbr. Co.    1,714.94
   Amsler Lbr. Co.    99.75
   Gulf Oil Co.    1.92
   McKethan's bad check    220.00
   M. Z. Collins Co.    100.16
   N. R. Smith Concrete    2,535.00

Other bad checks    300.00
Payrolls 9 and 10    411.23
SS & WH taxes    1,347.23   6,930.23

     1,930.23
"Plus credits due:
N. R. Smith labor    45.89
Extra for OT work    200.00
M. Z. Collins P/O    14.18
N. R. Smith fill rock    300.00
Nitewatchman    198.00
Conc. matls on job    300.00   1,058.07

"Net Amount Due    $ 2,995.53
     "Yours very truly,
         M. Z. Collins Construction Co.
         By—————"

Trial was had to a jury on special issues, the court instructed a verdict for the Bank against Montgomery for $15,220 and attorneys' fees; and a joint judgment for the Bank and Montgomery against Collins for $4,039.01 and costs, based on the answers to the special issues.

The appeal is before this Court on four points assigned as error by the plaintiff Bank and are that the court erred in failing to enter judgment for the Bank against Montgomery in the sum of $15,220 upon the basis of the fraud issues found by the jury and the uncontroverted facts, in refusing the Bank judgment for $15,220 on the uncontroverted evidence and the contract issues found by the jury, and in granting Collins judgment upon the issues, submitting special issues R–1 and S–1, in refusing to disregard the jury's answers thereof, and in refusing an instructed verdict for the Bank against both defendants for $2,995.53.

Collins has made two points to the effect that the trial court erred in refusing to disregard the findings of the jury that Montgomery relied on Collins in executing the release, and believed that the release stated correctly the amount of completed work, in that the findings were contrary to the evidence, and in refusing to enter judgment for Collins on the basis of the release; and in refusing to hold as

a matter of law that the Bank and Montgomery had accepted the check for $2,995.53 in compromise of the controversy.

As appellee, Collins urges five points: that it was not error for the court to refuse to enter judgment for plaintiff on issues concerning alleged fraud, that plaintiff did not plead or offer evidence on any damage suffered on the basis of fraud, because plaintiff sought to recover upon certain alleged oral promises which were within the Statute of Frauds, that this Court may not enter judgment against Collins for $2,995.53, and remand the remainder of the case for new trial, because the rules provide that only one final judgment shall be rendered in any cause.

The jury found in answer to special issues that Collins promised the Bank that all payments made for Montgomery's performance of his subcontract would be made jointly to Montgomery and the Bank, and that the Bank relied upon said promise in advancing funds. That the Bank, in consideration of such promise, advanced funds for the performance of the subcontracts.

The jury found that Collins failed to make all payments to Montgomery and the Bank jointly. Further finding was that before the Bank advanced any money to Montgomery that Collins promised to pay the Bank 90% of all completion certificates authorized by Collins if the Bank would advance said sums to Montgomery, and that the Bank believed and relied upon said promise in advancing funds, and that the Bank in consideration of said promise advanced to Montgomery approximately 90% of said completion certificates, with exception of certificate dated November 30, 1952; further finding was that on or about December 10, 1952, Collins promised the Bank that he would pay 90% of all completion certificates if the Bank would advance additional funds and that the Bank, in consideration of said promise, advanced additional funds to Montgomery. Further findings were that Collins by the completion certificates represented to the Bank that the amount shown on same was due Montgomery at the time of execution, and that such representations were false and were made to induce the Bank to advance such funds and that the Bank believed and relied on the truth of such representation in advancing such funds and that such representations were a material inducement to the Bank in advancing such funds; further finding was made that at the time of presentation of the completion certificates by Montgomery to the Bank and prior to each advancement of funds by the Bank that Montgomery represented to the Bank that he was entitled to the amounts as shown on the certificates for work performed on his subcontracts, and that in making such representations Montgomery was acting as the agent of Collins, and that such representations were false and made to induce the Bank to advance said funds, and that the Bank relied on the truth of such representations in advancing said funds, and were a material inducement to the Bank in advancing such funds and did induce the Bank to advance the sums, shown to be due in the completion certificates.

The jury found that Collins failed to make payments due Montgomery in compliance with the contracts and that Montgomery was prevented from completing the contracts by the failure of Collins to make payments due Montgomery, and that the work which Montgomery completed in compliance with the contracts was done in good and workmanlike manner.

Finding was made that the probable cost of performing the work remaining to be done in completion of the contracts after January 5, 1953, was $9,520; that Collins represented to Montgomery on January 5, 1953, that Montgomery had completed work in an amount not to exceed $15,726.75 under the two contracts, and that Montgomery relied on such representations in executing the instrument dated January 5, 1953, and was induced to execute such instrument, and that Montgomery had completed substantially more work than the amount of $15,726.75; that

Montgomery did not know that the amount of work completed by him on January 5, 1953, was substantially more than $15,-726.75 and that Montgomery did not believe that the work done was more than $15,726.75 and that Montgomery would not have executed the release except for the representation of Collins that the work done on said date was not more than $15,-726.75; that the reasonable value of the work done by Montgomery in performance of the contracts to January 5, 1953 was $19,030.

In answer to Special Issue R–1, the jury found that Collins agreed to pay the Bank only such amounts as Montgomery should be entitled to under his subcontract, and in answer to Special Issue S–1 the jury found that the agreement of Collins to pay the Bank the funds advanced for the subcontract was collateral to the agreement of Montgomery on his notes to the Bank and that the Bank did not accept the credit of Montgomery at the time the funds were advanced by the Bank on the subcontracts. The jury found that Montgomery abandoned the work provided for in the subcontracts on January 5, 1953.

We believe that the Bank was entitled to a judgment for $15,220 upon the basis of the fraud issues on the findings of the jury and on the uncontroverted facts.

Collins had a general contract on a housing project for approximately $279,-000 and on October 25, 1952, gave two subcontracts to Montgomery to do certain excavation, earth moving and concrete work, who requested the Bank to finance the subcontracts, and offered an assignment thereof to secure advances, which was refused by the Bank's president, Mr. England. Collins wrote the Bank the letter and issued the completion certificates hereinabove set out or referred to.

The Bank was still not satisfied and on October 31, 1952, Collins promised the Bank that he would certify to the Bank at intervals the amounts of money due Montgomery, if the Bank would advance to Montgomery 90% of said amounts.

Collins prepared and sent to the Bank by Montgomery seven completion certificates on several dates and in several amounts aggregating $18,720, but certificate dated November 30, 1952 was not sued on, Collins claiming the Bank misconstrued the amount shown due thereon, and that he would not pay it.

In this connection, Mr. Collins testified on cross-examination:

"By Mr. Corsbie

"Q. Each of these completion certificates was prepared by your agent, Mr. Holstien, and bears his signature? A. By my superintendent, Mr. Holstien, yes, sir.

"Q. Sir? A. By my superintendent, I mean my estimator, Mr. Holstien, yes, sir.

"Q. Now, I believe you said that Mr. England told you that he did not know anything about the contracting business and he wanted to be sure that all of the money went into the job, did he say that? A. Yes, sir.

"Q. You can tell by looking at him that he did not know anything about the contracting business and that in fact he was a banker? A. Yes, I am no banker and he was no contractor.

"Q. And you knew that? A. Yes, that's right.

"Q. Now, Mr. Collins, Mr. England and the bank would not advance any money until you talked with him and until you prepared these completion certificates, would he? A. Can I explain that?

"Q. Well, can you answer the question? A. I can by explaining it, yes, sir.

"Q. If you will answer the question yes or no, then you may explain it any way that you want. A. All right, you ask me the question and then I will tell you.

"Q. My question is, did the bank advance any money before you prepared the completion certificates? A. I don't believe they did. That is what they agreed to do. Now, you said that I could explain them?

"The Court: Go ahead.

"A. These completion certificates were for Mr. England's personal tab so he could keep tab on Mr. Montgomery and so that Mr. Montgomery wouldn't get more money than he had coming. That was done as a special favor and I agreed to do that for Mr. England's use. It did not mean that I was guaranteeing that I was going to pay.

"Q. The jury will have to decide on that matter, Mr. Collins. That is not for you to say. A. All right, I am sorry.

"Q. But when you prepared these they showed how much money was due Mr. Montgomery at each specific time, didn't they? A. Yes sir.

"Q. And that is what the purpose of preparing them was for? A. That is correct, yes, sir.

"Q. And you knew, as a matter of fact, when your man Mr. Holstien fixed them—did you tell him to take them down to the bank or to give them to Montgomery, you knew he was going to get in contact with Montgomery— A. He was to give them to Montgomery.

"Q. To take them to the bank? A. I am sure Mr. Montgomery had his orders to take them to the bank.

"Q. Well, you prepared them for Mr. England, there is no question about that, is there? A. Well, I explained that while ago.

"Q. Let me ask you this, I am afraid I am not making myself clear, but when you prepared these you had told Mr. England that you would prepare them? A. Yes, sir.

"Q. And you told him that you would have your man Mr. Holstien sign them? A. Yes, sir.

"Q. And that you would give them to Mr. Montgomery? A. Yes, sir.

"Q. And that Mr. Montgomery would bring them to him? A. Well, I presume that was right. That was their agreement.

\* \* \* \* \* \*

"Q. Well, let's refresh your recollection a little. When you had this difficulty relative to the November 30th estimate you came down and talked to them about how much money Mr. Montgomery had gotten, didn't you? A. I believe now Mr. England came out to the job first and then I went to the bank myself.

"Q. But you were in the bank? A. Yes, sir.

"Q. And you talked to him about how much money Mr. Montgomery had gotten, didn't you? A. Yes, sir.

"Q. And he told you then and you knew it to be a fact all along that Montgomery had been drawing ninety percent of the amounts? A. I knew he had drawn right around that, yes, sir.

"Q. And you knew that that was what you had talked to Mr. England about? A. Sure.

"Q. And you told him that you were going to pay Montgomery, what did you say, ninety percent? A. That's right.

"Q. And England said that he would advance ninety percent on these completion certificates, didn't he? A. Not particularly on the completion slips.

"Q. But in that conversation he said he would advance Montgomery the money, didn't he? A. Yes."

Mr. England testified that Mr. Collins told him that if the advances were made

**514**

that the completion certificates would be made each week, that he would pay the Bank 90% of the amount of the certificates; that completion certificates were made and sent the Bank each week.

Mr. Collins denied that he agreed to pay the Bank.

Mr. Tom Holstien, estimator and manager for Mr. Collins, testified as to the writing of the letter of October 28th and of a trip to the Bank with Mr. Collins, that Mr. Collins did volunteer to provide the Bank with a written statement weekly of the progress of the work, that he prepared such a statement on November 30th in the amount of $7,991.01 which was for work done on the job then, that the amount of work completed amounted to $15,726.75, that the release was given by Montgomery and as to other details of the work done and cost thereof, and as to variances in estimates made by him.

On cross-examination Mr. Holstien testified that the certificates were made to show the Bank how much money was due on the job, and how much work and material had gone on the job; and further testified that he knew the Bank was relying on the completion certificates and that he deliberately overshot his estimates to give Montgomery some money to operate on and that he did not tell the Bank that he was making the estimates larger than the work justified.

Mr. Montgomery testified concerning the contracts, the work done and that he got the money from the Bank as alleged, and of the letter and estimates, that Miller Collins, Superintendent for Mac Collins, directed his every step, and as to the execution of the release.

■ The testimony was extensive and the jury heard and resolved the issues as to promises made by Collins and as to the completion certificates on the basis of misrepresentation as set out in the Special Issues in favor of the Bank, and the Bank was entitled to a judgment against Collins in the amount of $15,220, the amount advanced in reliance upon the misrepresentations and fraud. 37 C.J.S., Fraud, §§ 5, 48,

pp. 220, 300; 20 Tex.Jur. 86, Sec. 54; p. 31, Sec. 15; p. 33, Sec. 16; El Paso Hilton Hotel Co. v. Peyton, Tex.Civ.App., 47 S.W. 2d 395, error dism.

We do not believe that the case of Citizens National Bank at Brownwood v. Ross Construction Co., 146 Tex. 236, 206 S.W.2d 593, is controlling because only a letter similar to the one written by Collins was involved and did not involve fraud and misrepresentation as was found in this instant case by the jury to have been perpetrated by Collins.

The testimony of Collins and that of his foreman, Holstien, is that they had no intention of paying the amount of the certificates unless all debts were paid, and further testified that they knew the Bank was relying on the validity of the certificates and that they showed the amount due Montgomery at the date they were made and further that they knew of debts due that they continued to issue the completion certificates.

The Bank has been unable to collect its debt from Collins and it is apparent that Montgomery is insolvent. Montgomery testified that he had lost his equipment and could not finance the job and in answer to a question on cross-examination testified that because Collins had not paid him the $15,000 or $18,000 that he went broke. The Bank relied on the representations of Collins and advanced the amount involved herein on the strength thereof. The jury found that Collins fraudulently made the representations.

We believe that the court was in error in relying upon the jury's answers to Special Issues Nos. R-1 and S-1, in entering judgment, but should have disregarded these issues and the answers thereof and should have rendered judgment for the plaintiff.

■ Special Issue R-1 inquired if Collins only cared to pay a limited amount, and Special Issue S-1, inquiring as to whether Collins' agreement was a collateral agreement to the agreement of Montgomery. There was no evidence to sustain the submission of these issues and they were submitted over sufficient objections and motion

to disregard them. 25 Tex.Jur. 480, Sec. 101; Guthrie v. Gossett, Tex.Civ.App., 142 S.W.2d 410; Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001.

■ The specific findings of the jury relative to the agreements of October 31, 1952 and December 10, 1952, would control over the general finding in Special Issue R–1 and Special Issue S–1.

The jury found in answer to Special Issues X–1 through X–8 that the Bank advanced the funds in consideration of Collins' promise, showing a primary obligation on the part of Collins to pay the amounts agreed, and the funds were advanced in consideration of such promise. 20 Tex.Jur. 225, Sec. 17.

Then, too, the jury found that Collins promised on December 10, 1952, to pay all completion certificates issued or to be issued if the Bank would advance additional funds, and the Bank, in consideration of the promise, did advance additional funds and Collins became bound to pay the Bank. Hacker v. Whitney Dam Lumber & Const. Co., Tex.Civ.App., 225 S.W.2d 225, error ref.

■ There is no question but that the Bank advanced the funds and that it was owed by Montgomery and also by Collins. Collins testified that he owed Montgomery and the Bank; that he had given them a letter stating that he would give the proceeds to them, pay the proceeds to those two, and consequently Collins did not have the right to force the Bank and Montgomery to accept the check for $2,995.53 with the notation that it is payment in full, and such check did not constitute a valid tender. Wiley v. Scott, Tex.Civ.App., 229 S.W.2d 650.

We do not believe that the retention of the check for $2,995.53 under the circumstances and conditions existing constituted an acceptance as a matter of law.

There was no bona fide controversy existing that was subject to accord and satisfaction.

Collins had never denied that the sum of $15,220 was due, or that he had promised to pay it, or that he had executed the completion certificates, but stated that he could not pay it, and no objection was made to the check remaining in the custody of the court in which it had been introduced in evidence. The check was the personal check of Collins and Collins was notified that it would not be accepted. The check was returned at the submission of the case. 1 C.J.S., Accord and Satisfaction, § 34, p. 536.

The judgment of the trial court as to M. Z. Collins is reversed and judgment here rendered for the plaintiff Bank against M. Z. Collins, doing business as Collins Construction Company, for the sum of $15,220 with interest from June 27, 1953, at the rate of 6% per annum; in all other respects the judgment of the trial court is affirmed.

Affirmed in part and reversed and rendered in part.