36634.  PIONEER NEON SUPPLY COMPANY *v.* JOHNSON
& JOHNSON CONSTRUCTION COMPANY, INC.

Decided April 17, 1957.

*Clinton J. Morgan, Wright, Rogers, Magruder & Hoyt,* for plaintiff in error.

*Fullbright & Duffey,* contra.

GARDNER, P. J.   Counsel for the plaintiff call our attention to Code § 37-113 which states: "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." The defendant, under the contract with A. G. Penuel was holding approximately 10% of $116,000 to be paid to Penuel on January 1, 1954.   The plaintiff loaned Penuel $8,000 on October 1, 1953, in reliance upon the written agreement hereinbefore set out, to make the 10% of $116,000 check payable to Penuel and the plaintiff jointly.   From the record it appears that the obvious purpose of this arrangement was to provide security for the payment of the loan to the plaintiff.   The defendant, subsequent to the signing of the agreement and in violation of the agreement, according to our construction of the contract, paid the $116,000 to Penuel alone and not to Penuel and the plaintiff jointly.   It is alleged in the petition that on June 14, 1956, Penuel was adjudicated a bankrupt, thus barring the plaintiff from recovering anything from him.   It is our opinion, in view of the whole record, that the loss to the plaintiff was occasioned by the violation of the contract by the defendant.   See *Federal Land Bank of Columbia* v. *Blackshear Bank,* 182 *Ga.* 657 (186 S. E. 724). Counsel for the defendant attacked the soundness of the *Federal Land Bank* case as being inapplicable here.   While that case and the case at bar are not identical as to facts, it is our opinion that they are similar in principle.   The petition in the instant case alleges conclusively that it was on the faith of Penuel se-

curing the defendant to sign this agreement approved by the defendant for the purpose of the plaintiff as having security for the loan of $8,000. The defendant evidently knew this, and it is inescapable that the plaintiff would not have parted with the $8,000 had it not been for the agreement to make the check payable to Penuel and the plaintiff jointly. Let us inquire as to the purpose of this agreement. Counsel for the defendant contend that Penuel, after the signing of the agreement with the defendant, had the right to require the defendant to make the check payable to him instead of the plaintiff and Penuel jointly. It is not logical to put such a construction upon the agreement, in connection with the pleadings in this case. See *Davis* v. *Tift*, 70 *Ga.* 52 (2a), wherein the Supreme Court said: "If the promise of T. to see the money paid was given before the loan was made, and furnished the inducement to the firm to part with their money, and they performed their part of the contract made with T., directly or through his agent, then he would be bound, irrespective of any acknowledgment in writing." Under Code (Ann. Supp.) § 3-108 (Ga. L. 1949, p. 455) it is undisputed that the plaintiff has the authority to bring this suit, provided, of course, the whole record makes out a cause of action. Counsel for the defendant called our attention to *Burke* v. *Steel*, 40 *Ga.* 217, 219, and *Lumpkin* v. *American Surety Co.*, 61 *Ga. App.* 777, 779 (7 S. E. 2d 687). We have read these cases and find that they do not support the contentions of the defendant. In addition to the Georgia decisions there is a decision of a Federal court which we are inclined to discuss here. Wolters Village Management Co. *v.* Merchants & Planters National Bank of Sherman, 223 Fed. 2d, 793, 796, is almost on all fours with the case at bar. In that case the court had the following letter to consider:

> "Central Electric Company
> Electrical Contractors
> 211 West Hoover Avenue, Box 423
> Killeen, Texas.

"Wolters Village Management Company
722 Eastern Avenue,
Dallas, Texas.
"Gentlemen:

"We wish to extend an assignment of all monies to Wherry Housing project, Mineral Wells, Texas, F.H.A. Project No. 113-80008-Air Force No. 7, to Merchants & Planters National Bank, Sherman, Texas.

"All checks for gross amount of contract $60,500.00, shall be made payable jointly to the Merchants & Planters National Bank and Central Electric Company.

"Yours very truly,
Central Electric Company
By Alvin H. Falck /s/

"Accepted by:
Central Electric Company, Killeen, Texas.
Alvin H. Falck /s/: Partner
Hal A. Moody /s/: Partner
"Accepted by:
Wolters Village Management Company
B. P. Dunlap /s/: Vice Pres."

In that case the following facts appear: "On August 10, 1953, upon presentation of this letter and the $60,500 subcontract between Central and Wolters, the bank made a loan to Central in the amount of $20,500, taking as further security therefor a demand note, a chattel mortgage on motor vehicles (estimated to be worth $2,500) and a preexisting assignment of Moody's life insurance policy, of a value of $1,500 to $1,700. The bank did not notify Wolters of this.

"As the work proceeded and Central submitted estimates, Wolters made six progress payments to Central by checks, all of which were made out not jointly, as provided in the letter, . . . The bank did not inform Wolters that the checks were not made out in accordance with the letter. It proceeded to make further advances of credit to Central." The court held: "The primary question is the effect of the letter agreement. The complaint referred to this as an assignment. The trial court said in its oral opinion: 'I find as facts, gentlemen, that the bank was dealt with

as the lender, not as the assignee, but as the lender of the monies . . . So that the money that was borrowed from the bank should be paid by the borrower, therefore, judgment should go against the Wolters Village Management Company for the amount of the loan which has been unpaid, that is, the amount of $19,788.73.' Since the material facts are undisputed, we are to ascertain the legal effect of the letter from the intentions of the parties as objectively manifested in the letter, construing that instrument in its entirety. It is clear that in general a right expected to arise in the future may be the subject of an assignment, if expected to arise under a contract in existence at the time of the assignment. 5 Tex. Jur. 11; Restatement, Contracts § 154 (1). Since Central's subcontract was in existence, its claim could have been assigned. But an assignment must be 'a manifestation to another person by the owner of a right indicating his intention to transfer, *without further action or manifestation of intention*, his right to such other person or a third person.' Restatement, Contracts § 149 (1). (Emphasis added.) The language of the letter does not admit of this construction; it did not state 'we have assigned' or 'we hereby assign,' but 'we wish to extend an assignment.' Thus it clearly contemplates some further act to complete the transfer of the right. For the same reason, the letter was not the kind of order drawn on a debtor for a part of a particular fund, which is effective as an assignment. 5 Tex. Jur. 34; Restatement, Contracts § 163 (1).

"Consequently, the assignment was not made by means of this letter, but was completed later, in the transaction between Central and the bank. If the bank's rights depended solely on the subsequently completed assignment, it would have no right against Wolters here, because a debtor is entitled to credits for payments made before notice of the assignment, 5 Tex. Jur. 40-42; Restatement, Contracts § 167 (1), and according to one Texas case, also for payments made after notice of the assignment if they reasonably appear necessary to enable the assignor to perform his duties under a building contract upon the performance of which his right to payment is dependent. Peden Iron & Steel Co. *v.* McKnight, 60 Tex. Civ. App. 45, 128 S. W. 156. But the bank's rights do not rest solely upon the assignment. We cannot agree

with the trial court's finding that Wolters and not Central was the actual borrower, for this is contrary to all the evidence; however, it seems clear that the letter was actually a contract for the benefit of the bank, which the bank may enforce. It amounted to a promise by Wolters (see Restatement, Contracts § 2 (1)) to make all checks under the Central subcontract payable jointly to Central and the bank. The consideration for this promise was the relinquishment by Central of its right to be paid in checks made to its order, or in whatever manner was provided in the subcontract. The purpose of Central in obtaining the promise was plainly to confer upon the bank a right against Wolters not then due from Central to the bank; the bank was therefore a donee beneficiary which can sue upon Wolters' promise."

The principles of law involved and decided there are exactly as we encounter in the case at bar. We note that that case was reversed, but that was done because the wrong measure of damages was applied and not because of the principles of law involved.

We are convinced that under the record in the instant case the court erred in sustaining the demurrers and dismissing the petition.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*