37299.   WEISS *v.* JOHNSON & JOHNSON CONSTRUCTION COMPANY, INC.

Decided January 9, 1959—Rehearing denied January 23, 1959.

*Wright, Rogers, Magruder & Hoyt, Clinton J. Morgan,* for plaintiff in error.

*Fullbright & Duffey, Henry J. Fullbright, Jr., Maddox & Maddox, James Maddox,* contra.

QUILLIAN, Judge. ■ Counsel for the plaintiff insists that the trial judge erred in not sustaining his demurrer to the amendment and in not sustaining his motion to compel the defendant to pay all accrued costs because the defendant did not attach an affidavit to the amendment stating that it was not filed for the purpose of delay. The defendant filed an affidavit on the date of the hearing which did not meet *all* the requirements of Code § 81-1310, but did aver that the amendment was not offered for purposes of delay. Generally it is within the court's discretion as to whether the amendment will be allowed without the affidavit. *Roberson* v. *Weaver,* 145 *Ga.* 626 (2) (89 S. E. 769); *Robinson* v. *DeVaughn,* 59 *Ga. App.* 37 (200 S. E. 213). The affidavit having supplied the general information that the amendment was not filed for the purpose of delay, the trial court did

not abuse its discretion in this case. Moreover, after the affidavit was affixed to the amendment, no further objection was made to the allowance of the amendment, and hence the objection made before the affidavit was attached to the amendment was waived.

■ We must decide in disposing of this case, as in every case where the breach of a contract is alleged, whether the instrument which is the basis of the action constituted a valid legal promise for the doing or not doing of a particular thing (Code § 20-101) and whether the defendant's conduct amounted to a violation of that promise.

In reaching a conclusion as to these matters, consideration must be given to the consideration for the promise, its nature, the circumstances under which it was made, the subject matter with which it dealt and the rules of law under which it is to be construed and enforced.

A similar but by no means identical promise is referred to in *Wehle* v. *Baker*, 97 *Ga. App.* 111 (102 S. E. 2d 661) as a contract of guaranty. In that case the promise was properly catalogued because it was not the acceptance of an order, but an original and unconditional agreement to pay a specified sum of money from a designated fund. The consideration of the promise was a benefit accruing to the promissor by reason of the promisee making a loan to a third party.

The promise made by the defendant in this case is the acceptance of a non-negotiable order.

The acceptor of such an order agrees to comply with it according to its tenor, and such conditions attached to the acceptance as arise from the nature of the order and the transaction with which it is connected. *Mutual Investment Corp.* v. *Friedman*, 83 *Ga. App.* 544 (64 S. E. 2d 298).

Where the order refers to a contract between the drawer and drawee, it is assumed, in the absence of a stipulation to the contrary contained in either the order or the acceptance of the same, that compliance with the order is as a matter of course to be in accord with and under the conditions contained in the contract. *Third Nat. Bank of Atlanta* v. *Western & Atlantic R. Co.*, 114 *Ga.* 890 (2) (40 S. E. 1016); *Mackin* v. *Blalock*, 133 *Ga.* 550 (66 S. E. 265).

Thus to the acceptance of a nonnegotiable order the rule stated by slightly varying language in the cases of Citizens Nat. Bank at Brownwood *v.* Ross Const. Co., 146 Tex. 236 (206 S.W. 2d 593, 595), and Wolters Village Management Company *v.* Merchants & Planters Nat. Bank of Sherman, 223 F. 2d 793, 801 is applicable. In the former case it is held, as quoted from the reporter system headnote: "If contractor having contracted with United States for erection of naval facilities, promised to make payments on contracts with subcontractor to subcontractor and bank jointly, contractor would not be liable to bank for breach of agreement where promise referred only to payments due to subcontractor under contracts, and balance in contractor's hands was not payable to subcontractor but to materialman of subcontractor because of default of subcontractor in making payments to materialman. Miller Act, §§ 1, 2, 40 U. S. C. A. §§ 270a, 270b." Page 593.

"But if it be contended that there is implicit in the wording of the letter, the attendant circumstances, and the subsequent dealings of the parties, a promise on the part of Ross to make the payments jointly, as claimed, still it is to be observed that the letter referred to 'payments to him (Campbell) under these contracts' and acknowledged that these were the payments which Campbell had instructed Ross to make to himself and the Bank together. Ross made the payments in keeping with Campbell's instructions until one of the latter's creditors who had furnished material on the jobs asserted a paramount right to the balance which remained due on the subcontracts. And in fact, Campbell did owe this materialman and could not pay him. Accordingly, Campbell had no further payments (except the $4.46 item) due him, and the balance in the Construction Company's hands was payable not to Campbell but to the materialman, and was properly so applied. Seaboard Surety Co. *v.* Standard Accident Ins. Co., 277 N. Y. 429, 14 N. E. 2d 778, 117 A. L. R. 658." Page 595.

The language of the Wolters case at page 801 is: "The brief of appellant Wolters discusses numerous cases which are claimed to support its position, but most of these are so inapposite to the issues as we view them, having eliminated the assignment theory

from our ratio decidendi, that they require no discussion. One case, however, Citizens National Bank at Brownwood *v.* Ross Const. Co., 146 Tex. 236, 206 S.W. 2d 593, 594, bears some considerable similarity on its facts. There, the prime contractor wrote a letter to the bank, stating that the subcontractor 'has requested that we give you this letter with instructions that all payments to him under these contracts are to be made payable jointly to Citizens National Bank, Brownwood, and the' subcontractor. The Bank made the loan and the prime contractor made progress payments by checks made out jointly. The subcontractor breached his contract by failing to pay a materialman, whom the prime contractor then became obligated to pay by reason of a federal statute. The contractor took $10,000 of the balance owing to the subcontractor and instead of paying it out by joint check as before, satisfied the claim of the materialman. The bank then sued the prime contractor, as in this case. The Texas Supreme Court held (1) that there was no assignment; (2) that there was no promise by the prime contractor to make out the checks jointly, but only a recitation that it had been instructed to do so by the subcontractor; and (3) even if there was such a promise inferred in fact, it was only to make 'payments . . . under these contracts', and since the contractor was not obligated under the contracts to pay this $10,000 to the subcontractor, it had in no event breached its promise. The Bank therefore could not recover.

"The present case is easily distinguishable both because there was an express promise to make payments by joint checks, and also because all the payments made in this case contrary to that promise, were payments to which the subcontractor (and derivatively, the Bank) was entitled. There is no inconsistency between the Citizens Bank case and our holding herein."

It must be observed that this is not a case brought for the breach of an absolute promise to pay money or make a particular fund available to the promisee, as in Nello L. Teer Co. *v.* Kanawha Valley Bank, 227 F. 2d 306, consequently that case and *Federal Land Bank of Columbia* v. *Blackshear Bank*, 182 *Ga.* 657 (186 S. E. 724) appear from the allegations of the petition to support somewhat the plaintiff's contentions as

pleaded, they have no general application to the facts of this case as shown by the evidence adduced on the trial.

The undisputed evidence submitted on the trial of the case we now review showed that the defendant contracted with the owner of real estate to build a warehouse upon the property. The defendant then in the role of prime contractor engaged A. G. Penuel, Jr., a subcontractor, to construct the building in part. The contract contained the usual ten percent retention contract, the meaning of which we have discussed. While the contract had only partly been performed by the subcontractor, a fact of which the plaintiff was aware, the defendant accepted the request of the subcontractor, Penuel, to make "the ten percent retention and final payment" on the contract payable to Penuel and the plaintiff jointly. "The ten percent retention and final payment" referred to in the contract between Penuel and the defendant is generally termed in builders' contracts "the retention fee". It is usually ten percent of the gross contract price of construction undertaken. In these circumstances the obligation of the defendant was to make the payment jointly to the subcontractor, Penuel, and the plaintiff, only in the event Penuel performed his contract according to its terms and was upon its completion entitled to be paid some sum of money. The completion of the contract necessarily included the requirement that the subcontractor satisfy charges for labor and materials incurred by him in carrying out his contract and for the payment of which the defendant would otherwise become liable.

When the case was formerly before this court (*Pioneer Neon Supply Co.* v. *Johnson & Johnson Construction Co.*, 95 Ga. App. 565, 98 S. E. 2d 156), it was held that the uncontradicted facts alleged in the petition set forth a cause of action. The petition showed the order was drawn on the defendant by the subcontractor, Penuel; the acceptance of the order; the fact that upon the faith of the acceptance the plaintiff made an $8,000 loan to Penuel and that the defendant broke its promise contained in the acceptance.

It was in substance held that under the facts alleged in the petition on the provisions of Code § 37-113, "When one of two

innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss," were applicable.

It must be noticed that the opinion then written assumed that Penuel, the subcontractor, was upon completion of the contract with the defendant entitled to be paid some sum which was subject to his order that it be paid jointly to him and the plaintiff. For as is noted from the report of the case, both the plaintiff and the defendant were at the time the order was accepted informed by the very words of the order that payment was to be made from the retention fee in the event the subcontractor upon the completion of his contract with the defendant was entitled to any fund held by the defendant to secure the subcontractor's faithful performance of his contract, including the retirements of demands he incurred for labor and material, and the defendant, the prime contractor, would otherwise become liable.

Thus the order and the acceptance were conditioned upon a contingency that from the allegation in the petition that the defendant breached his promise to the amount of the retention fee was properly assumed by this court, on its former appearance to have occurred.

Wolters Village Management Co., supra, and *Wehle* v. *Baker*, 97 *Ga. App.* 111, supra, are cases in which the plaintiff was induced to make a loan to another upon the unconditional promise of the defendant to pay certain money to that person. The Wolters case was considered by this court applicable to the facts of the instant case only because it was then assumed that the subcontractor, Penuel, was entitled to receive the amount of retention fee and to direct it payable to him and the plaintiff jointly, because dictated by the petition he had satisfactorily completed his contract. For here the acceptance, unlike those in the Wolters and *Wehle* cases is conditional upon the drawee being entitled to the fund upon which the order is drawn upon his completion of an executory contract. If the evidence in this case showed the subcontractor became entitled to the payment of some or all of the retention fee or the fund upon which the order was drawn, the Wolters and *Wehle* cases are applicable here, otherwise they are not.

Upon the return of the remittitur to the trial court, the defendant amended the answer and attempted to set up the defense that the subcontractor was not entitled to be paid any amount, and hence his order that a sum that would be due him from the retention fee and final payment be made payable to him and the plaintiff jointly, though accepted by the defendant, created no liability on the part of the latter. The amendment set up an issuable defense to the plaintiff's action upon the performance of his contract.

The burden of proof was on the plaintiff to prove his case as laid in the petition. He did prove a prima facie right to recover the sum sued for by adducing evidence that the order of Penuel to make the final payment and retention fee of $11,698.20 payable to Penuel and the plaintiff jointly was accepted by the defendant, who refused to make the final payment to Penuel and the plaintiff as stipulated in the order and acceptance.

When the plaintiff carried the burden of proving his case as alleged in the petition, the burden of evidence shifted to the defendant to establish a valid defense. The defenses upon which the defendant relied was a general denial of the material allegations of the petition contained in the answer as originally drawn, and the defense set up in the amendment.

The defendant's evidence admissible in setting up its defense showed that, after certain legitimate deductions, the amount of the "ten percent retention and final payment" under the contract between Penuel and the defendant was $11,698.20, that $11,144.86 was paid Penuel for materials used by him in carrying out his contract connected with the construction of a certain warehouse for General Warehouse, Inc., which construction was undertaken by the defendant as prime contractor and Penuel as the subcontractor; that Penuel owed a concern known as D. & B. Fabricators $15,000 for these materials; that the payment to Penuel was made in the presence of the Fabricator concern's representative; that the check for the same was immediately endorsed by Penuel and turned over to him; that, unless the D. & B. Fabricator's debt had been satisfied, the defendant would have become liable for the amount of the same. This left

a balance of the D. & B. Fabricators demand for such materials amounting to about $4,000 for which the defendant would likewise have become liable had not that concern agreed to forego its right to enforce the same against the defendant. Thus the defendant's evidence completely overcame that of the plaintiff and proved without conflict that the subcontractor was not entitled to any part of the ten percent retention and final payment, and that the acceptance of Penuel's order to pay the amount that would be due him from such fund created no liability on the defendant's part.

It follows that the trial judge did not err in directing a verdict for the defendant, and ruled correctly in denying the plaintiff's motion for judgment notwithstanding the verdict.

■ Ground 1 of the amended motion for new trial excepts to the admission of evidence submitted by the defendant for the purpose of showing it had no knowledge that the plaintiff would loan money to Penuel relying upon its promise expressed in the acceptance of Penuel's order. The evidence was not particularly related to the issues made by the pleadings, for as we have held the only question to be determined was whether the defendant complied with the acceptance according to its tenor. However, the plaintiff had no cause to complain that the evidence was admitted because he had previously introduced evidence concerning the same matter, and the defendant's evidence was merely in rebuttal to that he had offered. The answer was responsive to the question propounded by the plaintiff's counsel. He asked the witness under what circumstances the agent of the defendant signed the acceptance, and the witness's answer simply related some of the circumstances under which the acceptance was executed.

■ Ground 2 of the amended motion complains that the defendant's manager, was permitted to testify: "A. To further explain my answer, we did forestall legal action by issuing a number of papers that their bill would be satisfied prior to final payment and, on that assurance only, we were able to keep the job from having a number of liens placed against it." The objection interposed was that the witness's testimony was mere conjecture and speculative as to what other people would do un-

der given conditions. *Mutual Benefit Health &c. Assn.* v. *Bell,* 49 *Ga. App.* 640, 652 (176 S. E. 124), is the pronouncement of the sound rule of evidence that a witness will not be permitted to testify as to what another would do under given conditions or in certain circumstances. The testimony was inadmissible and should have been excluded. However, while the evidence was inadmissible, it was not material to the defense interposed, in fact, added no fact that had any legal effect. The defendant proved a complete defense to the plaintiff's alleged cause, and a verdict in its favor was demanded, without the aid of the testimony erroneously admitted.

■ Ground 3 of the amended motion complains of testimony obviously hearsay, but admissible under Code § 38-302 to explain the defendant's conduct.

■ Ground 4 of the amended motion complains that certain evidence was admitted over the plaintiff's objection. A part of the evidence referred to was not subject to the objection interposed, hence the ground shows no error.

■ Grounds 6, 8, and 11 of the amended motion assign error on the admission of evidence which in various forms supports the contention of the defendant that the subcontractor Penuel was not entitled to be paid the retention fee or final payment under his contract with the defendant, for the reason that it was necessary to apply the amount of the retention fees to the payment of debts for labor and material incurred by Penuel in carrying out the contract, and for which the defendant would be liable. The grounds are, under the ruling we have made in disposing of the general grounds of the motion for new trial, without merit.

■ Grounds 5, 7, 9 and 10 complain of the admission of evidence tending to show that the defendant was liable for the payment of charges for labor and materials contracted for by the subcontractor and the duty of the subcontractor to satisfy such demands in order to be entitled to final payment under the contract between him and the defendant. Under the rulings previously made in this opinion the grounds are without merit.

■ Ground 12 complains of the admission of evidence obviously irrelevant and inadmissible. The evidence had no

probative value and was not of a nature prejudicial to the plaintiff's cause. The ground shows harmless error.

*Judgment affirmed. Nichols, J., concurs. Felton, C. J., concurs in the judgment.*