## CITIZENS NATIONAL BANK AT BROWNWOOD V. ROSS CONSTRUCTION COMPANY ET AL.

No. A-1282. Decided December 3, 1947.
(206 S. W., 2d Series, 593.)

*Wilkinson & Griffin* and *J. Edward Johnson,* all of Brownwood, for petitioner.

*Mark Callaway,* of Brownwood, and *George C. Kemble,* of Fort Worth, for respondents.

Mr. Justice Simpson delivered the opinion of the Court.

This controversy involves for the most part an appraisal of the rights and liabilities of the parties growing out of the following letter:

"Durant, Oklahoma
September 14, 1943

"Citizens National Bank
Brownwood, Texas

Gentlemen:

This is to notify you of our recently executed contracts with the Campbell Electric Company, Brownwood, Texas, for electrical wiring of buildings in connection with our contract for Naval Air Facility at Durant, Oklahoma, and contract for Naval Air Facility at Conroe, Texas. The total amount of the two contracts is $22,354.68.

Mr. Campbell has requested that we give you this letter with instructions that all payments to him under these contracts are to be made payable jointly to Citizens National Bank, Brown, wood, and the Campbell Electric Company.

Very Truly Yours,

ROSS CONSTRUCTION COMPANY

By /s/ William B. Warner
Partner"

Ross Construction Company had contracted with the United States for the erection of the two naval facilities mentioned in the letter, and had subcontracted the electrical wiring to Campbell Electric Company. Campbell wished to borrow to finance the work, and applied to the Citizens National Bank at Brownwood for a loan. Before the Bank would extend the credit to Campbell, it required him to get this letter, and in reliance on it loaned him some $25,500.00, all of which went into labor and material for these jobs. As the work progressed, Ross remitted to Campbell and the Bank jointly $16,500.00, which was applied on the debt Campbell owed the Bank. Now it developed Campbell was losing money. He owed and was unable to pay Graybar Electric Company $13,000.00 for materials that had gone into this construction, and Graybar presented this account to Ross for payment. The parties do not dispute that Ross became liable to Graybar for this debt under

the federal statutes. Title 40, secs. 270a and 270b, U. S. C. 1940 ed. Under the circumstances, Ross discontinued payments jointly to Campbell and the Bank, and the latter wrote Ross on March 25, 1944, that it would expect the Construction Company to observe the terms of the September 14th letter. After receiving this last letter, Ross, without consulting the Bank, made a settlement with Campbell and Graybar by which Ross paid the latter $10,000.00 in full settlement of its claim. After the settlement with Graybar, Campbell had only $4.46 due him under the contracts. Ross tendered this sum to the Bank, which refused it and entered this suit. The district court rendered judgment for the Bank against both Ross and Campbell for the amount of the debt Campbell owed the Bank. Ross alone appealed. The Court of Civil Appeals concluded Ross was not liable to the Bank and rendered judgment accordingly. 201 S. W. (2d) 244. This writ was granted upon the point which urges in substance that there was error in the holding that the Ross Construction Company's letter of September 14, 1943, did not constitute an unconditional obligation on its part to pay the Bank and Campbell jointly all moneys arising under the subcontract without regard to whether Campbell paid his materialmen or not. A further study of the record compels the conclusion that this point is not well taken.

■ The rights of the parties turn, as has been observed, upon a construction of the letter which was quoted at the outset. The issue is narrowed pointedly by the following statement from the Bank's petition for this writ of error: "If Petitioner was holding an assignment from Campbell we would have no case here, but Petitioner Bank had a direct promise from Respondent to pay it and Campbell, jointly, the money." O'Neil Engineering Co. v. First Nat. Bank of Paris (Tex. Com. App.), 222 S. W. 1091. The difficulty with this assertion is that the letter cannot be construed to contain that kind of a promise. What it does is to acknowledge to the Bank that Campbell had had the contracts and had instructed Ross that "all payments to him under these contracts are to be made jointly" to the Bank and Campbell. It did not go the further and necessary step, if Ross is to be bound, and say that not only had Ross received these instructions from Campbell but would honor them. The letter nowhere binds Ross to do anything, but appears rather to be in the nature of a mere recital confirming the existence of the stated facts. Accordingly, by discontinuing joint payments to Campbell and the Bank when it developed Campbell was in difficulty, Ross was neither breaching any contract nor revoking any promise. Compare First State Bank of Jackson-

ville, Texas v. Pure Van Pipe Line Co. (5th Cir.) 77 Fed. (2d) 820.

But if it be contended that there is implicit in the wording of the letter, the attendant circumstances, and the subsequent dealings of the parties, a promise on the part of Ross to make the payments jointly, as claimed, still it is to be observed that the letter referred to "payments to him (Campbell) under these contracts" and acknowledged that these were the payments which Campbell had instructed Ross to make to himself and the Bank together. Ross made the payments in keeping with Campbell's instructions until one of the latter's creditors who had furnished material on the job asserted a paramount right to the balance which remained due on the subcontracts. And in fact, Campbell did owe this materialman and could not pay him. Accordingly, Campbell had no further payments (except the $4.46 item) due him, and the balance in the Construction Company's hands was payable not to Campbell but to the materialman, and was properly so applied. Seaboard Surety Co. v. Standard Accident Ins. Co., 277 N. Y. 429, 14 N. E. (2d) 778, 117 A. L. R. 658.

■ The Bank urges an estoppel. The representations upon which it relies consist of what the Bank claims is a promise to do something in the future. The conclusion has been expressed that, while the September 14th letter does not contain an express promise, still even if one could be gleaned from the letter, the attendant circumstances, and the dealings of the parties, Ross has in fact discharged any promise which might thus be implied. Of course, even if there were an outstanding promise, the Bank would find itself confronted with the rule that ordinarily an estoppel will not be grounded upon a promise to do something in the future. It is true that this rule is subject to certain exceptions, but none of them apply here. Notably, what the writers have called a promissory estoppel may, in a proper case, be raised upon a promise to do something in the future even if the promise is unsupported by any consideration. But this species of estoppel contemplates, among other elements, a breach of a promise or conduct inconsistent with it, and these elements are absent in respect of the Construction Company's conduct here. We conclude that there is no estoppel in this case. 19 Am. Jur., Estoppel, secs. 52 and 53; 31 C. J. S., Estoppel, sec. 80.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered December 3, 1947.

No motion for rehearing filed.