**BRIERCROFT SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**FOSTER FINANCIAL CORPORATION, Appellee.**

No. 4861.

Court of Civil Appeals of Texas, Eastland.

Feb. 19, 1976.

Rehearing Denied March 11, 1976.

Edward R. Smith and Robert Don Collier, Lubbock, Dean Carlton, Dallas, for appellant.

Edward J. Kolb, Dallas, for appellee.

RALEIGH BROWN, Justice.

Foster Financial Corporation sued Briercroft Savings and Loan Association for contractual damages allegedly sustained as a result of Briercroft's failure to fund a loan after making a commitment to William Lee

Folse. Foster made an interim loan of $225,000 to Lee Folse Properties, corporate nominee of William Lee Folse. It alleged the loan was based on a conditional loan commitment letter from Briercroft to Folse; .that before making the loan it communicated with Briercroft and received certain writings concerning the commitment letter. Following a jury verdict, the trial court entered judgment for Foster for $225,000 plus interest. Briercroft appeals. We reverse and render.

Briercroft argues the trial court erred in denying its motion for an instructed verdict because Foster failed to establish a claim of right against Briercroft or any duty from Briercroft to Foster. We agree.

Foster states in its brief:

"This suit arose out of the breach of a written agreement between Briercroft, the permanent lender, and Foster, the interim lender, which Briercroft breached after Foster had made an interim loan, to the borrower, in reliance on the agreement, which interim loan has not been paid, thus resulting in substantial damages to Foster for which Foster sued Briercroft."

Foster argues it is entitled to recover either contractually on the commitment letter and other writings or as a third party beneficiary or on the theory of promissory estoppel.

Briercroft issued to William Lee Folse a first lien mortgage loan commitment letter agreeing to make a loan of $225,000 to either William Lee Folse or his corporate nominee. The loan was to be secured by a tract of land in Garland, Texas. William Lee Folse, President of Lee Folse Properties, Inc., accepted the commitment, which included the provision, "Any interim or construction financing required and the cost thereof shall be your sole responsibility."

Folse gave a copy of the commitment letter to W. S. McCarver, Vice President of Foster, and requested an interim, twelve month loan of $225,000 from Foster. McCarver contacted Briercroft by tele-

phone, made certain inquiries concerning the commitment letter, and requested certain matters be put in writing. A letter and telegram, having the same language, were forwarded to Foster as requested. The writings provided:

"August 3, 1973

Foster Financial Corporation
P.O. Box 171
Fort Worth, Texas   76101

Attn: Bill McCarver

Gentlemen:

On July 12, 1973, over my signature, Briercroft Savings and Loan Association made a loan commitment to William Lee Folse, 1500 LTV Tower, Dallas, Texas in the amount of $225,000.00.

That commitment has been accepted by Mr. Folse, the fees have been paid and all conditions are in full force.

We have accepted the appraisal report furnished us and the commitment is fully operative.

We have no intentions of funding the loan prior to May 1, 1974 but the commitment is a full twelve months from July 26, 1973.

We will endeavor to make this transaction acceptable to your institution.

Very truly yours,

BRIERCROFT SAVINGS & LOAN ASSN.

Sid A. Lowery, Jr."

Following the receipt of the telegram, Foster made the loan to Lee Folse Properties, Inc.

Thereafter, Briercroft refused to make the loan to Lee Folse Properties, Inc. It contends the conditions of its commitment were not met. Lee Folse Properties, Inc. has not repaid the interim loan to Foster, and neither William Lee Folse nor Lee Folse Properties, Inc. are parties to the instant suit.

The liability of Briercroft to Foster on the loan commitment letter issued to William Lee Folse is controlled by the holding in *Republic Nat. Bank of Dallas v. National Bankers Life Ins. Co.,* 427 S.W.2d 76 (Tex. Civ.App.—Dallas 1968, writ ref. n. r. e.). The court considering a situation very similar to that presented by the instant case said:

"It is an elementary rule of law that privity of contract is an essential element of recovery in an action based on contractual theory. Thus generally in order to maintain an action to recover damages flowing from the breach of a written agreement it is ordinarily a necessary prerequisite that there be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement. *Gehl Bros. Mfg. Co. v. Price's Producers, Inc.,* 319 S.W.2d 955 (Tex.Civ.App., El Paso 1958); 13 Tex.Jr.2d, Contracts, § 367, p. 643; 17A C.J.S. Contracts § 518, p. 940.

A well defined exception to the general rule thus stated is that one who is not privy to the written agreement may demonstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement. 13 Tex.Jur.2d, Contracts, § 352, pp. 628–629; 17A C.J.S. Contracts § 519(1), p. 947, et seq."

.    .    .    .    .

"Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. *Citizens Nat. Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941); *Calame v. Prudential Ins. Co. of America,* 423 S.W.2d 940 (Tex.Civ.App., Waco 1968)."

■ In the instant case, it has been stipulated that Foster was not a party privy to the commitment letter. The unambiguous terms of the letter provide that any interim financing required would be the sole responsibility of Folse. Such language prohibits a construction that the letter was intended for the benefit of third parties as to interim financing. Foster, therefore, could not recover on a contractual theory nor as a third party beneficiary of the commitment letter.

The jury answered two of the twenty-one special issues submitted as follows:

"SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on or about August 3, 1973 Briercroft Savings & Loan Association, through S. A. Lowery, Jr., agreed in writing with Foster Financial Corporation that Briercroft Savings & Loan Association would protect an interim loan of Foster Financial Corporation to Lee Folse Properties, Inc., in the sum of $225,000.00 by honoring the Savings & Loan commitment letter of July 12, 1973 (Plaintiff's Exhibit 1)?

Answer 'Yes' or 'No'.

ANSWER: Yes."

"SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that on or about August 3, 1973, Briercroft Savings & Loan Association's vice president, S. A. Lowery, Jr., agreed with Foster Financial Corporation's officer that Briercroft Savings & Loan Association would assume payment, as its own debt, to the extent of $225,-000.00 of interim financing indebtedness of Lee Folse Properties, Inc. to Foster Financial Corporation?

Answer 'Yes' or 'No'.

ANSWER: No."

■ The only written documents, other than Briercroft's commitment letter to Folse, were the identical telegram and letter sent by Briercroft to Foster at the request of Foster. Briercroft argues the telegram and letter cannot be interpreted as any evidence Briercroft agreed in writing to protect an interim loan of Foster to Folse Properties. We agree.

There is no assertion by either party that the writings are ambiguous. The court in *Myers v. Gulf Coast Minerals Management Corporation,* 361 S.W.2d 193 (Tex.1962) stated:

" . . . It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court. See *Turner v. Montgomery,* Tex.Com.App., 293 S.W. 815; *North v. North,* Tex.Civ.App., 2 S.W.2d 481, 483; *Brown v. Payne,* 142 Tex. 102, 176 S.W.2d 306, 308."

See also *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex. 1968).

The court in determining the intention of the parties apply the rule stated in *Parker Chiropractic Research Foundation v. Fairmont Dallas Hotel Company,* 500 S.W.2d 196 (Tex.Civ.App.—Dallas 1973, no writ):

"Where the contract is unambiguous the court will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617 (1954); 4 Williston on Contracts § 610; Restatement of the Law of Contracts § 230;

The parties to an instrument intend every clause of the contract to have some effect and in some measure to evidence their agreement. Restatement of the Law of Contracts § 230;

In construing a contract the court is to take the wording of the instrument and consider the same in the light of the surrounding circumstances and then apply the pertinent rules of construction thereto to settle the meaning of the contract. *Spence & Howe Construction Co. v. Gulf Oil Co.,* 365 S.W.2d 631 (Tex.Sup. 1963); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex.Sup. 1968)."

The sentence in the telegram and letter, "We will endeavor to make this transaction acceptable to your institution" cannot be interpreted as evidence of an agreement by Briercroft to protect Foster by honoring Briercroft's commitment to Folse. The words are not evidence of any present agreement between Briercroft and Foster. Nothing in that sentence, nor any other statement in the letter or telegram, indicates that Briercroft was undertaking any present obligation to Foster.

The sentence, at most, indicates an agreement to make an agreement in the future and such writings are insufficient to be an enforceable obligation because as stated in *Parker Chiropractic,* supra:

"An agreement to make a future contract must be definite and certain upon all the subjects to be embraced in such future agreement. Thus, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations. Where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. *Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472 (1937); *Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co.,* 432 S.W.2d 731 (Tex.Civ.App., Amarillo, 1968, writ ref'd n. r. e.); *Friedrich v. Moke,* 296 S.W.2d 565 (Tex.Civ.App., San Antonio, 1956, writ ref'd n. r. e.)."

Nothing in the letter or telegram discloses the terms and conditions of any agreement between Briercroft and Foster, it therefore, fails as an enforceable contract to enter a future contract.

The writings being unambiguous and not creating a present obligation of Briercroft to Foster nor being sufficiently definite and certain to be enforceable as an agreement to make a future contract, Briercroft has no duty to Foster under the writings.

■ We do not agree with Foster's argument that the judgment should be upheld under the doctrine of promissory estoppel.

■ This doctrine is defensive in nature. A promise must be proved before promissory estoppel may be applied. The court in

*"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1972) said:

"Promissory estoppel is a defensive plea; it is a plea in confession and avoidance. We so held in *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965), when we said:

'This (promissory estoppel) does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. . . . The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise.'"

The promise relied upon by Foster in support of its promissory estoppel theory is the written agreement inquired about in Special Issue No. 1. We have held that such writing as a matter of law does not constitute a promise to protect the interim loan made by Foster. Foster neither pleaded nor proved any promise other than the alleged promise made in writing.

Foster's reliance on the doctrine of promissory estoppel to uphold the judgment must fail, as stated by the court in *Southland Life Ins. Co. v. Vela*, 147 Tex. 478, 217 S.W.2d 660 (1949):

". . . An estoppel is defensive in character. It does not create a cause of action. Its function is to preserve rights, and not to bring into being a cause of action. *Washington National Insurance Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854; *Massachusetts Bonding & Insurance Co. v. Dallas Steam L. & D. Works*, Tex.Civ.App., 85 S.W.2d 937, writ refused."

■ We overrule the cross-point of Foster that error was committed in granting Briercroft's second requested extension of time in which to file the statement of facts.

Briercroft's motion showed diligence in attempting to obtain the statement of facts. The failure to prepare the statement sooner was the press of official business by the court reporter. Good cause for the second extension of time to file the statement of facts was shown. *Anzaldua v. Richardson*, 279 S.W.2d 169 (Tex.Civ.App.—San Antonio 1955, writ ref. n. r. e.); *Hudgens v. Texas Casualty Insurance Company*, 465 S.W.2d 832 (Tex.Civ.App.—Amarillo 1971, writ ref. n. r. e.).

The judgment of the trial court is reversed and rendered.