FRETZ CONSTRUCTION COMPANY,
Appellant,

v.

SOUTHERN NATIONAL BANK OF
HOUSTON, Appellee.

No. 17617.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 24, 1980.

Rehearing Denied May 22, 1980.

Bracewell & Patterson, William Fred Hagans, Houston, for appellant.

Andrews, Kurth, Campbell & Jones, Fred Knapp, Jr., Houston, for appellee.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

This appeal is brought by Fretz Construction Company (Fretz) from a judgment for damages against Southern National Bank of Houston (Bank) based on an alleged breach of contract, promissory estoppel, fraud, negligence and quantum meruit. Fretz also sued Aqua-Con of South Texas (Aqua-Con), Joe Ross Stutts (Stutts), its president, and several other defendants. An interlocutory agreed judgment was taken against Aqua-Con and Stutts, and Fretz proceeded to trial before a jury against the Bank. The court disregarded the jury's findings in favor of Fretz's contract theory and entered judgment for Fretz based only on the promissory estoppel finding. The

interlocutory judgment against Aqua-Con and Stutts was made final and incorporated in the judgment before us.

We reverse and render in part and affirm in part.

In 1974, Fretz entered into a construction contract with Aqua-Con and Joe Ross Stutts to build a six-story office building, known as the Bank of Woodlake Project in Houston, Texas. Appellee Southern National Bank was to supply interim financing for the project, not to exceed an amount of $3,050,000. Any additional funds needed for the project were to be supplied by Aqua-Con.

Testimony elicited at the trial showed that included in the contract negotiations was a letter written by a vice president of the Bank to Travelers Indemnity Company, issuer of performance and payment bonds for the project. The letter which is crucial to this case reads:

(LETTERHEAD OF SOUTHERN NATIONAL BANK)

April 2, 1974

Mr. L. L. Rhodes
Surety Department
Traveler's Indemnity Company
P. O. Box 1446
Houston, Texas 77001
Dear Mr. Rhodes:

Re: Payment and Performance Bonds Aqua-Con of South Texas, Inc., Houston, Texas—Owner Fretz Construction Company—Contractor

This is to confirm that $2,372,715.00, which represents the bonded construction costs of the above-captioned project to be owned by Aqua-Con of South Texas, Inc., has been set aside by Southern National Bank of Houston to be paid to Fretz Construction Company (Contractor) in progress payments as set out in the loan documents and construction contract. No brokerage fees, inspection fees, taxes, insurance, interest, or any other costs or fees incurred by borrowers or lenders will be removed from the contract sum.

Yours very truly,

/s/ H. H. KUHLMAN, III

H. H. KUHLMAN, III

Vice President

HHK:oc

Fretz's employee also testified that oral representations were made to him that reiterated the contents of the letter.

Upon substantial completion of the project, Fretz tendered a request for final payment in the amount of $274,604.30 to Aqua-Con, which found only $50,000 remaining from the loan proceeds. The Bank paid Aqua-Con this amount completing the $3,050,000 of its loan commitment. Payment of the remaining $224,604.30 amount was not forthcoming from the Bank or Aqua-Con. Fretz brought suit against several defendants originally. Later, after settling with them, Fretz named the Bank in this suit based on the above letter, claiming actual damages in the amount of $274,604.30, exemplary damages of $100,000.00 and attorney's fees together with all prejudgment and postjudgment interest which might be due.

Trial was to a jury, which answered seventeen special issues finding that there was an agreement between Fretz and the Bank to set aside the amount of $2,372,715 to be paid only to the Fretz; that Fretz should recover on his promissory estoppel theory; that Fretz was intended by the parties to the letter to be the primary beneficiary of its contents; that the Bank had not made any fraudulent representations to Fretz; and that Fretz should receive damages in the amount of $108,489.00. Prior to rendering judgment on the verdict, the court heard several motions including motions on behalf of both parties to disregard certain jury findings. The court subsequently disregarded the jury's answers on the theories of contract and fraud, and rendered a judgment in favor of Fretz based on promissory estoppel, awarding Fretz $108,489.

Fretz, being unsatisfied with the amount of the judgment, brings eight points of error. Appellee files 73 cross-points of error.

■ By its first point of error, Fretz complains that the court erred by disregarding the jury's answer to Special Issue No. 1 whereby the jury was asked if Southern National Bank agreed with Fretz to (a) set aside $2,372,715 to be paid to Fretz upon completion of the construction project and (b) that no brokerage fees, inspection fees, taxes, insurance, interest or any other costs or fees incurred by borrowers or lenders would be removed from the sum that was to have been set aside for Fretz. The jury answered both parts in the affirmative. Fretz contends that a contract was formed between it and the Bank, but we fail to find the legal prerequisites for such a contract either orally or in writing. The trial court found the foregoing letter was not a contract between Fretz and the Bank, nor was there a third party beneficiary situation. Therefore, the trial court correctly disregarded the jury's findings on the special issues relating to the contract. Fretz's points of error 1, 3, 4, 6 and 7 are overruled.

■ Fretz must show that its claim of promissory estoppel is soundly based, since we sustain the trial court's rejection of the contract theory, the law being settled that promissory estoppel and a contract cannot exist simultaneously and that promissory estoppel does not create a contract where none previously existed. *Wheeler v. White*, 398 S.W.2d 93 (Tex.1965).

Paragraph VIII of Fretz's trial pleading alleges as follows:

> Fretz would show unto the court and Jury that Southern National Bank represented, agreed and contracted orally and in writing, *pursuant to the terms and conditions of the loan documents* and the agreement attached hereto and incorporated herein by reference as Exhibit "C," to set aside and segregate as a special deposit, and to hold as a trustee for the benefit of Fretz, all necessary progress payments as set out in the above referenced loan documents and the construction contract attached hereto as Exhibit "A," said payments to be paid to Fretz. (Emphasis ours)

The Exhibit "C" (which is also Exhibit 47) refers to the letter from the Bank to Travelers Indemnity Company set out above.

Exhibit "A" refers to the construction contract between Fretz and Aqua-Con. Based upon such pleadings and the evidence adduced in support thereof, the following Special Issue No. 9 was submitted to the jury on the theory of promissory estoppel:

Do you find from a preponderance of the evidence that Southern National Bank promised Fretz Construction Company: (a) that it would set aside the sum of $2,372,715.00 for the purpose of paying Fretz Construction Company for work on the Bank of Woodlake office building construction project?

Answer "we do" or "we do not".

ANSWER: WE DO

(b) That no brokerage fees, inspection fees, taxes insurance, interest or any other costs or fees incurred by borrowers or lenders would be removed from such sum?

Answer "we do" or "we do not".

ANSWER: WE DO

Then follow issues 10 through 16 covering expectation of reliance on the alleged promise, reliance thereon, unjustness on any denial by the Bank and the amount expended by Fretz in reliance on such promise.

By proper cross-points of error, the Bank directly attacks the submission of special issues 9 through 16 on the ground that any promise on which Fretz could rely as an inducement for its entering into the performance of the building project would have to be based on the letter of April 2, 1974, and the oral conversations which Hammerle had with Kuhlman. This promise, if any, the Bank contends, contained the qualifying or conditional language of the loan documents and construction contract, which language was omitted from special issue no. 9, the predicate for issues 10 through 16. We think there is merit in this contention.

The Restatement of Contracts § 90 defines the doctrine of promissory estoppel as follows:

A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise.

To invoke the doctrine of promissory estoppel 1) there must be a promise on the part of the defendant, 2) foreseeability by defendant that plaintiff would rely thereon, 3) substantial reliance thereon by the plaintiff to his detriment, and 4) a finding that injustice can be avoided only by enforcement of the promise. *Aubrey v. Workman*, 384 S.W.2d 389 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1972). The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal. *Concord Oil Co. v. Alco Oil & Gas Corp.*, 387 S.W.2d 635 (Tex.1965); *Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.). When the promise upon which the estoppel is based is conditional or subject to qualifying contingencies, the burden of proving compliance with such conditions and contingencies rests upon the party seeking to enforce the promise. Absent such proof, the doctrine of promissory estoppel does not apply. In *Stanley Furniture Company, Inc., v. Texas State Bank*, 425 S.W.2d 883 (Tex. Civ.App.—Austin 1968, no writ) the court had before it a similar fact situation as in the case before us. The Texas State Bank was holding funds in escrow belonging to Austin and Manor which was to be paid on the purchase of furniture from Stanley, "provided all the terms and conditions are met by Warren", who had a contract with Austin and Manor. The Bank, at Warren's request, sent Stanley a letter advising of the $5000 escrow funds, how they were to be disbursed and a copy of the contract. Stanley delivered the furniture to Warren. The Bank later disbursed the funds in accordance with the escrow agreement. Stanley got none of the funds and filed suit against the Bank, claiming that the letter sent to it concerning the escrow funds con-

stituted a written promise which the Bank breached. Refusing to apply the doctrine of promissory estoppel, the court held that there was no basis for holding the Bank liable on such theory since the subject letter made reference to the contract and put Stanley on notice that the Bank "was acting and would continue to act, subject to its duties under the contract."

In every case which we have been able to find where the facts show the existence of promises which are conditional or qualified, the courts have held that there is no breach of promise to parties in Fretz's position, where the promissor performs pursuant to such conditions. In *Citizens National Bank at Brownwood v. Ross Const. Co., et al.*, 146 Tex. 236, 206 S.W.2d 593 (Tex.1947), our Supreme Court dealt with the interpretation of a letter which the appellant therein claimed contained a promise for its benefit and sought recovery on the theory of promissory estoppel. The court, observing that estoppel did not apply, held that the recitation in the letter from Ross to the Bank concerning the making of joint payments to the Bank and a subcontractor was merely an acknowledgement of certain conditional payment arrangements between Ross and the subcontractor and that when certain conditions were not met by the subcontractor, Ross could not be held liable to the Bank on the theory that the letter was a direct promise to make joint payments. The court further noted that the rights of the parties turned upon a construction of the letter from Ross to the Bank.

Did the Bank through its vice president Kuhlman make an unconditional promise to set aside $2,372,715.00 to be paid to Fretz in progress payments in the letter of April 2, 1974? A fair reading of the letter compels the conclusion that such an amount "has been set aside" . . . "to be paid to Fretz Construction Company (Contractor) in progress payments as set out in the loan documents and construction contract." We interpret this sentence to mean that the Bank was telling Travelers that it was willing to be bound to pay the stated amount for Fretz when due as progress payments according to the provisions of the loan docu-

ments. Thus, before we can determine what conditions are to be met before any payments would be set aside for Fretz, a thorough examination of loan documents and construction contract must be made. Every oral discussion touching upon this point, especially the testimony of Hammerle, Kuhlman and Fretz, reveals that the loan documents were meant to be considered. It is significant that the loan contract makes no provision for paying any funds to Fretz. The progress payments were to be made to Aqua-Con only in this manner:

> Each advance to cover costs of construction shall be made by the Bank only after receipt by the Bank from Contractor of a written request therefor, supporting certificates from the Inspecting Architect in form and substance satisfactory to Bank, written approval of the making of such advances executed by Borrower, and satisfactory inspection by Bank of the work in progress, . . .

Thus it appears abundantly clear that the promise, if any, contained in the letter was dependent upon certain conditions being met by Aqua-Con and Fretz. The evidence shows that these conditions were breached by Aqua-Con and Fretz in several particulars, among which were the failure to provide the permanent loan financing, pay property taxes and complete the tenant improvement work. We therefore sustain appellee's cross-points of error addressed to issues 9 through 16.

Holding, as we do, that the Bank did make a conditional promise for Fretz's benefit in the letter of April 2, 1974, we must find also that the Bank breached such promise before any liability would be incurred by it. It is undisputed that the loan documents provided that the Bank was to fund the amount of $3,050,000, which the record before us shows it paid. Further, there is no evidence that the breaches of the various loan documents were caused in any manner by the Bank. Fretz was then in the position of suing the Bank for the breach of a promise upon which Fretz itself had defaulted. This court had a similar

case of default on the part of the appellant in *Lewis v. River Oaks Capital Corporation*, 466 S.W.2d 348, 352 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.). In affirming the summary judgment against the appellant, this court found that there was no breach by appellee's assignor, River Oaks Bank, in refusing to make certain stock available to the appellant, since the appellant had already defaulted in making agreed payments on the note for such stock. The court said:

> He had been in default since August 29, 1967. This constituted a material breach of this contract by appellant. This excused Bank from performance.

We have considered whether this case should be remanded in view of the undisputed facts adduced. We have determined that the subject letter, at most, stated a conditional promise to set aside a sum certain for payment to Fretz when the loan documents with respect to progress payments had been complied with. The conditions thus embodied in the promise became a part of the construction loan agreement and the construction contract, both being valid existing contracts. The theory of promissory estoppel could never be applicable under such a situation. This is the rationale set forth by our Supreme Court in *Wheeler v. White*, supra. In the absence of any ambiguity in the subject letter, the trial court should have construed it to be subject to the terms and conditions of the loan documents, with respect to progress payments and granted the Bank's motion for an instructed verdict. As we construe the written instrument, promissory estoppel is not applicable. Fretz's points of error are overruled.

The judgment against the Bank is reversed and judgment is rendered in the Bank's favor. In all other respects the judgment is affirmed.