# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00310-CV

**T. David Young, Appellant**

**v.**

**PlainsCapital Bank, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-GN-14-004656, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant T. David Young appeals from the district court's summary judgment in favor of appellee PlainsCapital Bank (the Bank). Young sued the Bank for breach of contract, claiming that the Bank had agreed to sell him certain real property that it owned. On cross-motions for summary judgment, the district court denied Young's motion and granted summary judgment to the Bank. Because the unsigned real-estate sales contract Young seeks to enforce is required by the statute of frauds to be both signed and in writing, and because Young's summary-judgment evidence fails to raise a fact issue as to any exception to the statute of frauds, we affirm the district court's judgment.

## Background

In September 2013, Young and his real-estate agent Tate Chiles (collectively, "Young") began negotiations with the Bank, through Bank employee Sean Denton, to purchase property owned by the Bank. As part of these negotiations, Young and Denton met in person and exchanged emails regarding the details of the proposed sale. The emails, which the Bank attached as summary-judgment evidence, established the following sequence of events:

- Sept. 17—Young agrees to meet with Denton at his office to discuss the deal.

- Sept. 18—Young sends Denton a proposed contract to purchase the property.

- Sept. 19—Denton emails Young's proposal to Bank supervisors, asking how they would like to proceed.

- Sept. 24—Denton tells Young that Denton "received a response this morning that all the terms appeared acceptable but that they would like for us to rework the addendum."

- Oct. 4—Young sends an email to Denton confirming "our conversation today and the attached addendum" and stating that Young "agrees to the addendum and all changes." In the same email, Young asks Denton if he wants Young "to clean this up and send it to you Monday or do you want to take care of it? We will initial and sign all documents needed." Denton replies, "It would be quicker if you cleaned it up and sent me an executable version."

- Oct. 7—Young sends Denton a copy of the purchase contract and a copy of the addendum incorporating the Bank's requested changes, both of which were signed and initialed by Young only. Young asks Denton to "review Paragraph 10 of the addendum in which we clarified the undefined word 'affiliate' and to let him know if there were any questions."

- Oct. 7—Denton forwards to his supervisor the purchase contract and addendum signed by Young and a document titled "ORE Sale Approval Request," explaining, "This should be clean copies of everything. Let me know if you need anything else from me."

In addition to the foregoing emails, Young offered as summary-judgment evidence his own affidavit and deposition testimony alleging that Denton assured him during an October 4 conversation that the contract was complete and would be signed. The Bank offered as summary-judgment evidence

2

the minutes of its Special Assets Committee from November 2013, showing that the committee rejected the sale to Young.

In his suit against the Bank for breach of contract, Young asserted that the Bank promised to sign the purchase contract and that, because he relied on that promise to his detriment, he is entitled to an order compelling the Bank to perform its obligation under the contract despite the fact that the Bank had not signed the purchase contract. Both parties filed motions for summary judgment on Young's claim. Young argued, among other things, that a contract was formed when Denton emailed Young that "all the terms appear acceptable" and Young agreed via email to the proposed changes to the addendum. The Bank argued that it, and not Young, was entitled to summary judgment because, among other assertions, there was no contract, the contract alleged by Young would violate the statute of frauds, and the Bank did not make any promise to sign a contract. The trial court granted the Bank's motion for summary judgment and denied Young's motion.

**Discussion**

On appeal, Young asks us to reverse the district court's summary judgment and remand the cause for further proceedings, arguing (1) the Bank accepted the terms of the contract on at least three occasions; (2) the Bank made a promise to sign the agreement, making it enforceable despite the statute of frauds; and (3) even if the written correspondence between the parties did not constitute an acceptance, the substance of the October 4 phone conversation raised a genuine issue of material fact that precluded summary judgment. We disagree. Summary judgment in favor of the Bank was proper because (1) the summary-judgment evidence conclusively established that the real-estate contract Young seeks to enforce was not signed, and is thus unenforceable under the

3

statute of frauds, and (2) Young did not raise a fact issue on his argument for a promissory-estoppel exception to the statute of frauds.

Texas's statute of frauds requires that certain transactions—including a contract for the sale of real estate—be in writing and signed for the contract to be enforceable:

> A promise or agreement [for the sale of real estate] is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

Tex. Bus. & Com. Code § 26.01(a), (b)(4). Young agrees, and the summary-judgment evidence establishes, that the contract at issue here is an unsigned contract for the sale of real estate. Thus, the contract is subject to the statute of frauds and unenforceable unless Young can prove an exception.

Young has pleaded the promissory-estoppel exception to the statute of frauds, which allows a party in certain circumstances to enforce a contract otherwise barred by the statute of frauds where the other party to the contract made a promise to sign a written agreement. *See Nagle v. Nagle*, 633 S.W.2d 796, 799–800 (Tex. 1982) ("[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice.") (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972)); *see also Hooks v. Bridgewater*, 229 S.W. 1114, 1116 (Tex. 1921) (recognizing promissory-estoppel exception to statute of frauds). Here, because the summary-judgment evidence conclusively establishes that the unsigned contract is subject to the statute of frauds, Young had the burden to adduce evidence raising a fact issue

4

concerning his promissory-estoppel defense to avoid summary judgment. *See "Moore" Burger*, 492 S.W.2d at 936–37.

Pointing to his affidavit, deposition testimony, and the emails offered by the Bank, Young asserts that the Bank made a promise to sign the agreement when he and Denton spoke on the phone, and Denton requested in an email a clean, "executable version" of the contract without explaining that the committee still had to approve it. But even taking as true all evidence favorable to Young, indulging every reasonable inference and resolving all doubts in his favor, Young has not met his burden of raising a question of fact concerning a promise to sign the agreement. *See, e.g.*, *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (explaining summary-judgment standard of review). Even if the Bank, through its agent, orally approved the terms of the addendum and requested an "executable version" of the contract, this merely establishes that the Bank wanted an agreement that was capable of being signed, not that the Bank promised to sign it.[1]

Young relies on *Fretz Construction Co. v. Southern National Bank*, 626 S.W.2d 478 (Tex. 1981), to support his contention that the Bank's actions here constitute a promise to sign the purchase contract. Young asserts that the court in *Fretz* held that, despite the lack of a signed agreement, the defendant bank was obligated to fulfill its promise to supply funds because it had communicated to the plaintiff that a binding agreement existed. But the existence or nonexistence of a signed contract was never raised in *Fretz*, and the underlying agreement there concerned

---

[1] *See Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002) (defining, relevant here, "execute" as "perform what is required to give validity to (as by signing and perhaps sealing and delivering)" and the suffix "-able" as "capable of, fit for, or worthy of (being so acted upon or toward)").

payment of funds for a construction loan, not the sale of property or any other contract subject to the statute of frauds. *See id.* at 483. *Fretz* does not support Young's claim that the promissory-estoppel exception to the statute of frauds applies here.

## Conclusion

Because the summary-judgment evidence establishes that the real estate contract Young seeks to enforce was unsigned, and Young's summary-judgment evidence has not raised a genuine issue of material fact on his defense based on the promissory-estoppel exception to the statute of frauds, we affirm. Having determined that the contract is unenforceable as a matter of law, we need not address Young's remaining issues. *See* Tex. R. App. P. 47.1.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Puryear and Bourland

Affirmed

Filed: July 14, 2017