02-12-007-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00007-CV

 

 


 
 
 Glenn
 A. Wade and Karen Wade
  
  
 v.
  
  
 XTO
 Energy Inc.
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From County Court at Law
 No. 3
  
 of
 Tarrant County (2009-071744-3)
  
 January
 24, 2013
  
 Opinion
 by Justice Walker
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

          It
is further ordered that appellants Glenn A. Wade and Karen Wade shall pay all
costs of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Sue Walker

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00007-CV

 

 


 
 
 Glenn A. Wade and Karen Wade
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM County
Court at Law No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

In
this breach of contract case, appellants Glenn A. Wade and Karen Wade argue
that the trial court erred by granting judgment notwithstanding the verdict
(JNOV) after the jury returned a verdict for the Wades, finding that they had
entered into a mineral lease with appellee XTO Energy Inc. and that XTO had breached
the lease.  We will affirm.

II.  Factual and Procedural Background

XTO
retained Holland Acquisitions to assist XTO in leasing the mineral interests
from homeowners in the Overton Woods neighborhood of Fort Worth. Holland was
responsible for conducting title searches, hosting lease-signing parties, and preparing
the lease paperwork.

The
Wades own Block 1, Lot 16 in the Overton Woods subdivision, including the
mineral interests in the property.  Holland, as XTO’s agent, sent the Wades a
letter in November 2007, proposing to lease the Wades’ mineral interests for a
$10,000 per net acre bonus payment and a 25% royalty.  The Wades thought the
offer was too low and did nothing to accept it.

In
July 2008, Holland sent the Wades another offer letter, proposing a $21,000 per
net acre bonus and a 26% royalty.  The letter also included a lease form, which
had a signature block for the Wades to sign as lessors and a notary block on
the last page of the lease.  The lease form also included as a separate page an
Exhibit “A” describing the leased premises as Block 1, Lot 16 of the Overton Woods
Addition to Fort Worth.  The Wades took the lease form to a bank and signed it
in front of a notary, who filled out the notary block.  However, Glenn decided
to “sit on it for a while,” thinking XTO might make a better offer, and he put
the signed lease on his desk.[2]

On
September 4, 2008, Holland sent the Wades a new offer letter, proposing a
$25,000 per net acre bonus and a 25% royalty.  The letter included a lease form,
which, like the previous lease, included signature and notary blocks on the
last page of the lease and an Exhibit “A” describing the leased premises as the
Wades’ property.  The letter instructed the Wades to mail the executed lease to
Holland, at which time XTO would mail them a bonus check.  Glenn did not trust
that he would receive a check, so he contacted Pam Dietrich with Holland and
informed her that he and his wife wanted to accept that offer.  Glenn told
Dietrich that he did not want to mail the signed lease back to Holland but
wanted instead to exchange it for a bonus check.  Dietrich informed Glenn of an
upcoming signing party where he could exchange the executed lease for a bonus
check.

The
Wades never executed the September 4, 2008 lease.  Glenn went to the signing
party on September 18, 2008, and took with him all of the documents that he had
received from Holland and XTO, including the executed July 2008 lease and the
unexecuted September 4, 2008 lease.  Karen did not go with him.  A Holland employee
at the registration table looked at the documents and told Glenn that they were
out of date and that he needed to sign a new lease.  The Holland employee took
a new lease form off a stack of leases on the table and handed it to Glenn;
Glenn confirmed that it contained the same bonus and royalty terms as the lease
he received in the mail earlier that month.  Glenn asked if his wife needed to
come to the signing party to sign the new lease, and the Holland employee told him
that they could use the signature page from the July 2008 lease that had
already been signed by the Wades and notarized.  The Holland employee wrote
Glenn’s and Karen’s names and address in the blanks for the lessors’ on the first
page of the lease form and attached the last page of the July 2008 lease
(executed by the Wades and the notary) to the new lease.  The Holland employee kept
the lease and told Glenn to go to the back table to get a bonus check.  At the
check table, Glenn filled out a check receipt form and received a bonus check
in the amount of $12,430.[3]  The check stub attached
to the check included a description of the Wades’ property, including the lot
and block numbers and acreage.

As Glenn
left the signing party, two Holland representatives stopped him and told him
that they could not find his signed lease in their paperwork; they asked to
look through his documents to see if it was mistakenly included in them.  When
they did not find it in Glenn’s papers, he offered to sign another lease and
have Karen come to the party and sign as well.  The Holland employees told him
not to “worry about it,” and Glenn left.  The Holland employees returned to the
signing party and resumed looking for the signed lease or anything with the
Wades’ signatures on it.  They only found the check receipt form in their
paperwork, so a Holland leasing agent drove to the Wades’ residence to have
them sign a new lease.  No one answered the door.

The
following day, the Wades used the bonus check to purchase a certificate of
deposit in the same amount as the bonus payment.  However, on that same day,
XTO stopped payment on the bonus check because it did not have a signed lease
from the Wades; XTO did not notify the Wades that it stopped payment on the
check.  The Wades’ bank sent them a letter the following week notifying them of
the stopped payment.  Glenn did not read the letter until several weeks later,
and upon reading it, he contacted Dietrich to inquire about getting a new bonus
check.  She told Glenn that XTO was no longer leasing.  Glenn also spoke with
XTO’s general counsel, who said that XTO had stopped payment on the check
because it did not have a signed lease and that it was making no further
leasing offers.  Shortly thereafter, XTO sent the Wades a letter stating that
it was rescinding all offers to lease their mineral interests.

The
Wades brought this suit against XTO for breach of contract, promissory
estoppel, declaratory judgment, and specific performance.  The case proceeded
to a jury trial.  After the Wades rested, the trial court granted XTO’s motion
for directed verdict on the issue of actual authority and on the Wades’
promissory estoppel claim.  The jury returned a verdict in favor of the Wades,
finding that the Wades “agree[d] to lease their minerals to XTO,” and awarding
the Wades damages of $12,430.00 and attorney’s fees.[4]

The
Wades filed a motion to enter judgment, and XTO filed a motion for JNOV.  The
trial court denied the Wades’ motion, granted XTO’s motion for JNOV, and
entered judgment that the Wades take nothing on their claims.

III.  Standards of Review

A
trial court may disregard a jury verdict and render JNOV if no evidence
supports the jury findings on issues necessary to liability or if a directed
verdict would have been proper.  See Tex. R. Civ. P. 301; Tiller v.
McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend Cnty. Drainage Dist.
v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper
only under limited circumstances: (1) when the evidence conclusively
establishes the right of the movant to judgment or negates the right of the
opponent; or (2) when the evidence is insufficient to raise a material fact
issue.  Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29
S.W.3d 74, 77 (Tex. 2000); Playoff Corp. v. Blackwell, 300 S.W.3d 451,
454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh’g).

          To
determine whether the trial court erred by rendering a directed verdict or JNOV,
we view the evidence in the light most favorable to the verdict under the
well-settled standards that govern legal sufficiency review.  See Ingram v.
Deere, 288 S.W.3d 886, 893 (Tex. 2009); City of Keller v. Wilson,
168 S.W.3d 802, 823 (Tex. 2005); Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003).  We must credit evidence favoring the jury verdict
if reasonable jurors could and disregard contrary evidence unless reasonable
jurors could not.  See Exxon Corp. v. Emerald Oil & Gas Co., 348
S.W.3d 194, 215 (Tex. 2011); Tanner v. Nationwide Mut. Fire Ins. Co.,
289 S.W.3d 828, 830 (Tex. 2009); Cent. Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007).

IV.  Breach of Contract

          In
their first issue, the Wades argue, in four subparts, that the trial court
erred by granting JNOV for XTO because sufficient evidence exists in the record
to support the jury’s findings that the parties entered into an oil and gas
lease for XTO to lease the Wades’ mineral interests, because the statute of
frauds does not preclude enforcement of the lease, and because evidence
supported the jury’s award of attorney’s fees to the Wades.

Jury
Question No. 1 asked, “Did the Wades agree to lease their minerals to XTO?”  Question
No. 2 asked, “Did the Wades and XTO agree to an oil and gas lease made up of
pages 1 through 5 of the September 4, 2008 lease form followed by the original,
fully executed, notarized signature page from the July 11, 2008 lease form?”  Question
No. 5 asked, “Did the Wades and XTO agree to an oil and gas lease in which the
Lessors are defined as ‘Glenn Alan and Karen Carter Wade, whose address is 4850
Moss Hollow Ct., Fort Worth, Texas 76109’?”  Question No. 6 asked, “Did the
Wades and XTO agree to an oil and gas lease in which the Leased Premises is
described, in part, by an attached Exhibit ‘A’ that reads ‘Block 1, Lot 16,
Overton Woods Addition, City of Fort Worth, Tarrant County, Texas, 0.4972
acres, more or less’?”  The jury answered, “Yes” to these questions.  The jury
also found that XTO’s failure to comply with the agreement resulted in damages
of $12,430 to the Wades.

XTO
moved for JNOV arguing in part that no evidence existed that the Wades’ names
and addresses were correctly filled in on the lease form (Jury Question No. 5)
or that an Exhibit “A” defining the leased property as the Wades’ property was
ever filled in and attached to the lease (Jury Question No. 6).  In a letter to
the parties’ attorneys, the trial court wrote that it did not find any evidence
to support the jury’s answer to Jury Question No. 6.  The trial court
subsequently entered a written judgment granting XTO’s motion for JNOV and
ordering that the Wades take nothing.

A.  Statute
of Frauds

Oil
and gas leases are conveyances of interests in real property and, as such, must
comply with the statute of frauds to be valid.  See Tex. Bus. & Com.
Code Ann. § 26.01(b)(4) (West 2009); Long Trusts v. Griffin, 222 S.W.3d
412, 416 (Tex. 2006).  The statute of frauds requires that all contracts for
the sale of real estate be in writing and signed by the person to be charged.  Tex.
Bus. & Com. Code Ann. § 26.01(a); see also Tex. Prop. Code Ann. §
5.021 (West 2004) (requiring that conveyance of land be in writing and
“subscribed and delivered by the conveyor”).  To satisfy the statute of frauds,
a writing conveying an interest in property must furnish, either within itself
or by reference to some other existing document, the means or data by which the
real estate at issue may be identified.  Texas Builders v. Keller, 928
S.W.2d 479, 481 (Tex. 1996).  Parol evidence may be used to explain or clarify
the written agreement, but not to supply the essential terms.  Id.; see
Long Trusts, 222 S.W.3d at 416.  The validity of the legal description
of the property that is subject to the conveyance is not, under the statute of
frauds, affected by the knowledge or intent of the parties.  Morrow v.
Shotwell, 477 S.W.2d 538, 540–41 (Tex. 1972); May v. Buck, 375
S.W.3d 568, 574 (Tex. App.—Dallas 2012, no pet.).

B.  Insufficient
Evidence to Support Jury’s Finding of a Valid Lease

Here,
there is legally insufficient evidence of a fully executed lease that complies
with the statute of frauds to support the jury’s verdict.  The Wades did not
accept any of the lease offers from XTO that they received in the mail prior to
September 2008, including the July 2008 lease that they signed and had
notarized, nor do they base their claims on any of those leases.  Instead, the
Wades are attempting to enforce the September 2008 lease that they never signed. 
As XTO stated in its brief to this court, “This case can be summed up as
follows:  the Wades signed a lease that they did not accept and allegedly
accepted a lease, without a property description, that they did not sign.”

The
July 2008 lease that the Wades executed contains different material terms than
the September 2008 lease that they are attempting to enforce, and even the July
2008 lease’s signature page—where the Wades and the notary signed—contains
provisions that conflict with those of the September 2008 lease.[5]  But even assuming that
attaching the signature page from a prior lease, which contains different terms
than the September 2008 lease, to the September 2008 lease sufficed to satisfy the
requirement that the lease be signed by the lessor, see Tex. Bus. &
Com. Code Ann. § 26.01(a); Tex. Prop. Code Ann. § 5.021, there is legally insufficient
evidence in the record that Exhibit “A” was filled out with a description of
the leased premises and attached to the lease that the Wades are attempting to
enforce.  The form lease that the Holland employees used at the September signing
party includes blanks for the lessors’ names and address and states that the
lessors leases “the land described on Exhibit ‘A’ attached hereto (the ‘leased
premises’).”  The Exhibit “A” attached to the form lease also includes blanks
for the block and lot, and acreage of the leased premises:

 

Exhibit “A”

Block ___, Lot ___

Overton Woods
Addition

City of Fort Worth,
Tarrant County, Texas

_______ acres, more or less

Although
Glenn testified that a Holland employee at the registration table filled in the
Wades’ names and address on the first page of the lease and attached the
signature page of the July 2008 lease to it, Glenn never testified that the
leasing agent or anyone else ever filled out Exhibit “A” to describe the leased
premises, and the record is devoid of any evidence raising a material fact
issue that the lease that the Wades are attempting to enforce—the September
2008 lease—provided a property description for the leased premises.  See
Prudential Ins. Co. of Am., 29 S.W.3d at 77; Playoff Corp., 300
S.W.3d at 454.  While “[t]he record leaves little doubt that the parties knew
and understood what property was intended to be conveyed,” the lease had to
furnish within itself or by reference to another writing the means to identify
the leased premises with reasonable certainty.  See Morrow, 477 S.W.2d
at 540–41.  Thus, contrary to the Wades’ arguments on appeal, we cannot look to
the bonus check stub, offer letters, or other extrinsic documents not
referenced in the lease to supply the necessary legal description.[6] 

The
Wades further contend that the jury could have inferred that the leasing agent completed
Exhibit “A” based on circumstantial evidence:  Glenn testified that the leasing
agent filled in his and his wife’s names and address on the first page of the
form lease; Glenn gave the leasing agent all the documents XTO and Holland had
sent the Wades, which stated the legal description of the Wades’ property, and
therefore the leasing agent had the information necessary to fill out Exhibit
“A”; and Glenn’s neighbor testified that he also executed a lease at the
signing party and that a leasing agent filled in the blanks on his lease form. But
this evidence does no more than create a mere surmise or suspicion that the
leasing agent filled out the Exhibit “A” to the lease that the Wades are
attempting to enforce and does not amount to more than a scintilla of evidence to
support the jury’s finding.  See Blount v. Bordens, Inc., 910 S.W.2d
931, 933 (Tex. 1995); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983).

Viewing
the evidence in the light most favorable to the jury’s verdict under the
well-settled standards that govern legal sufficiency review, crediting evidence
favoring the jury verdict if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not, we find insufficient evidence to
support the jury’s finding that the Wades entered into a September 2008 lease
that described the leased premises.  

C. 
Counter-Defenses to Statute of Frauds Inapplicable

The
Wades also argue that the doctrines of partial performance and promissory
estoppel apply here as counter-defenses to the statute of frauds.  XTO responds
that the Wades waived these counter-defenses by not pleading them or requesting
jury findings on them.[7] 

Promissory
estoppel and partial performance have been recognized as equity-based
exceptions to the traditional statute of frauds.  Bank of Tex., N.A. v.
Gaubert, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism’d w.o.j.);
see also Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982) (explaining
promissory estoppel exception to statute of frauds); Exxon Corp. v.
Breezevale Ltd., 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied)
(explaining partial performance exception to statute of frauds).  Generally,
the party claiming an exception to the statute of frauds must secure a finding
to that effect unless the exception is conclusively established by the evidence.
 Mann v. NCNB Tex. Nat’l Bank, 854 S.W.2d 664, 668 (Tex. App.—Dallas
1992, no writ); see Tex. R. Civ. P. 279; Choi v. McKenzie, 975
S.W.2d 740, 744 (Tex. App.—Corpus Christi 1998, pet. denied).  Nevertheless, we
need not decide whether these exceptions were properly pleaded or conclusively
established because, as we explain in part V below in addressing the Wades’
affirmative cause of action for promissory estoppel, they sought, and presented
evidence, on only benefit-of-the-bargain damages.  When promissory estoppel or
partial performance applies to except an agreement from compliance with the
statute of frauds, the party is entitled to only reliance damages, not
benefit-of-the-bargain damages.  See Breezevale Ltd., 82 S.W.3d at 441; see
also Transcon. Realty Investors, Inc. v. John T. Lupton Trust, 286
S.W.3d 635, 646 (Tex. App.—Dallas 2009, no pet.).    Because the Wades have not
pleaded or presented any evidence that they incurred any reliance damages, they
are not entitled to recovery under these exceptions to the statute of frauds.

D. 
JNOV was Proper

Having
determined that insufficient evidence exists to support the jury’s finding that
the Wades entered into a September 2008 lease that described the leased premises
and that no evidence exists that the Wades incurred any reliance damages as
required to support recovery under an exception to the statute of frauds, we
hold that the trial court correctly granted JNOV that the Wades take nothing on
their breach of contract claim.  Furthermore,
because the trial court correctly granted JNOV on the Wades’ breach of contract
claim, they were not entitled to attorney’s fees on this claim.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) (providing for recovery
of attorney’s fees for claims for oral or written contracts); Green Int’l,
Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (providing that
attorney’s fees are recoverable only if claimant prevails on cause of action
and recovers damages).  Having addressed all of the subparts of the Wades’
first issue, we overrule it.

V.  Promissory Estoppel

In
their second issue, the Wades argue that the trial court erred by entering a directed
verdict on their promissory estoppel claim.  

The
requisites of promissory estoppel in Texas are: (1) a promise; (2)
foreseeability of reliance thereon by the promisor; and (3) substantial
reliance by the promisees to their detriment.  See English v. Fischer,
660 S.W.2d 521, 524 (Tex. 1983); Frost Crushed Stone Co., Inc., 110
S.W.3d at 44.  Damages recoverable in a case of promissory estoppel are not the
profit that the promisees expected, but only the amount necessary to restore them
to the position they would have been in had they not acted in reliance on the
promise.  Fretz Constr. Co. v. S. Nat’l Bank of Houston, 626 S.W.2d 478,
483 (Tex. 1981); Frost Crushed Stone Co., Inc., 110 S.W.3d at 47; see
also Transcon. Realty Investors, Inc., 286 S.W.3d at 646 (explaining that when
the statute of frauds bars enforcement of the representations, only
out-of-pocket costs are recoverable).

          Here,
the Wades pleaded that they were “entitled to recover damages in the amount of
the lease bonus and landowner’s royalty,” and they sought damages in the amount
of $12,430—the amount of the bonus check that Wade received at the September
signing party.  The Wades sought what they would have gained had they entered
into a valid lease with XTO.  These are benefit-of-the-bargain damages—not
reliance damages recoverable on a claim for promissory estoppel.  Because the
Wades presented no evidence of reliance damages, that is, any amounts necessary
to place them in the position they would have been in had they not relied on
XTO’s promise, their promissory estoppel claim fails.  See Fretz
Constr. Co., 626 S.W.2d at 483.  Consequently, we hold that the
trial court correctly entered a directed verdict for XTO on this cause of
action, and we overrule the Wades’ second issue.

VI.  Conclusion

          Having
overruled the Wades’ two issues, we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
WALKER, MCCOY, and GABRIEL, JJ.

 

DELIVERED:  January 24, 2013










[1]See Tex. R. App. P. 47.4.





[2]He also made a copy of the last page of the lease for his records.





[3]The check was pre-printed and dated September 16, 2008, two days
prior to the signing party.





[4]Specifically, the jury awarded attorney’s fees of $50,000.00 for
preparation and trial, $15,000.00 for an appeal to the court of appeals, and
$15,000.00 for an appeal to the Texas supreme court.





[5]The last page of the July 2008 lease contains, in addition to the
Wades’ and the notary’s signatures, paragraphs 14 through 20 of the lease;
paragraph 19 is titled “Option to Extend” and provides for additional
consideration of $15,000 per net mineral acre if XTO exercised its option to
extend the lease under that paragraph.  The last page of the September 2008
lease contains, in addition to blanks for the lessors’ and notary’s signatures,
part of paragraph 21 and all of paragraph 22 of the lease.  Unlike the July
2008 lease, the “Option to Extend” paragraph is on the previous page and
provides for additional consideration of $20,000 per net mineral acre if XTO
exercised its option to extend the lease under that paragraph.  Thus, by
attaching the last page of the July 2008 lease to the end of the September 2008
lease, there were two provisions governing the option to extend, each
containing different terms.





[6]And although the form lease included the
Wades’ street address in the blank for the lessors’ address, and this is the street address of the leased premises, nothing in
the lease defines the leased premises as the lessor’s mailing address or
otherwise connects the defined term “leased premises” with the lessor’s mailing
address.  Instead, it refers to an attached exhibit to supply the description
of the leased premises.





[7]The Wades sought affirmative relief under the equitable doctrine of
promissory estoppel, but they did not plead promissory estoppel as an exception
to the statute of frauds.  See Frost Crushed Stone Co., Inc. v. Odell Geer
Const. Co., Inc., 110 S.W.3d 41, 46 & n.1 (Tex. App.—Waco 2002, no
pet.) (explaining the difference between promissory estoppel as a
counter-defense to statute of frauds and as a cause of action for affirmative
relief).